Sarah Evelyn FEESE,
Petitioner-Appellant-Respondent,

v.

Donald Edward FEESE,
Respondent-Respondent-Appellant.

No. WD 30830.

Missouri Court of Appeals,
Western District.

March 2, 1981.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 30, 1981.

Application to Transfer Denied
May 11, 1981.

**883**

on December 16, 1976. The court awarded custody of the couple's two children to the wife, and allowed the husband visitation in accordance with terms of a property settlement agreement of the parties incorporated in the judgment. The husband was further ordered to pay child support of $250 per month per child. The extent and nature of the property is not shown, but the property settlement required payment to the wife of $100,000 in principal, plus annual interest over a five-year period.

In March of 1978, the wife filed a motion entitled "Application for Order to Show Cause in Contempt" alleging that the husband was violating the custody decree and that the husband forcibly took one of the children from the wife. The order to show cause was issued the same week, and the answer of the husband was filed shortly thereafter.

In his answer, the husband denied the allegations of the wife's petition and also filed a motion to modify the decree of dissolution. This motion alleged that the children preferred to voluntarily stay with the husband and that the husband was better suited to take care of the children than the wife. It sought a change of custody of both children to the husband.

The wife then filed an answer to the husband's motion to modify the dissolution decree, alleging that she was the parent most competent to care for the child. Other interim pleadings were filed which have not been made a part of the record.

In October, the wife filed an "Amended Motion to Modify Decree of Dissolution and Answer to Respondent's Motion." This motion alleged that a change of circumstances had occurred and that, as a result, a termination or severe limitation of visitation should be ordered. The wife further sought leave to move out of the state, requested an increase in child support, and an "order" to the husband to pay back child support. The wife's motion alleged in great detail harassment, abuse, threats, illicit affairs, and the taking of one of the children for seven months in violation of the custody decree.

Kelso Journey, Clinton, Janice P. Noland, Camdenton, for petitioner-appellant-respondent.

Paden, Welch, Martin, Albano & Graeff, Michael W. Manners, Independence, Phillips, McElyea, Walker & Carpenter, Charles E. McElyea, Camdenton, for respondent-respondent-appellant.

Before MANFORD, P. J., DIXON and NUGENT, JJ.

DIXON, Judge.

These are cross appeals from bitterly contested postdissolution motions. The issues are custody, visitation, and support reviewed pursuant to Rule 73.01 and *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).

The marriage of Don and Sarah Feese (hereafter husband and wife) was dissolved

In December, 1978, the husband filed his answer denying most of the allegations but admitting that he had not made any child support payments for the seven months he had the older child with him. The husband relied upon the property settlement agreement as excusing the non-payment. The agreement, read in context, excused only support payments due during the lengthy summer visitations provided for in the agreement.

The trial testimony is long on acrimony and short on substance. The testimony offered by both husband and wife indicates a violent controversy over visitation and custody. Both parties claimed a good relationship with both children, and each party freely criticized the other.

The wife was 43 years old and forewent maintenance in the agreement in exchange for certain property from her husband. The husband apparently owned substantial business property and was also engaged in real estate activity. Two sons were born during the marriage, and at the time of the hearing of the motions in March of 1979, Rick was almost 4, and Don, Jr., was 14. The wife worked for the husband during the marriage until replaced by a secretary who is now the husband's wife.

As a matter of the background of the problems arising with respect to the custody and visitation, and drawing upon the total testimony at the hearing, the following will demonstrate the attitude of the parties.

The wife believed the husband was ashamed about the late birth of the younger son and did not care for that child. She believed he was too interested in his work and that his affair with his secretary detracted from his relationship with both her and the children. She complained of his returning the children late from visitation, and she believed he influenced the community against her, in effect, compelling her to sell her home and leave the community. The wife also felt the husband was influencing the older son to leave her custody.

The husband's position, understandably, was that the difficulties between the par-

ties with respect to visitation were the fault of the wife. Most of this testimony obviously relates to both the period of the marriage and the first year after the divorce.

The motions and the ensuing difficulties about custody erupted simultaneously with the wife's decision to sell her home and move from the area. The house was sold in May of 1978, and, as noted, the original motion by the wife was filed in March of that year. The wife's original motion was filed about the middle of March just after an incident involving the older son.

The older son had not returned from the weekend visitation but had remained with his father. The husband had called the wife and told her the boy did not want to return to his mother. The husband refused to let the wife talk to the son. The son went to school the next day, and the father claims that the boy asked the father to pick him up after school. The wife picked Don, Jr. up from school, but the husband parked his car next to the wife's and ordered the older son out of the car. The husband stood in front of the wife's car, and the son got in the father's car. The police were called, and the wife stood in front of his car and blocked his exit. The husband defied the officer and took the child. This is not disputed by the husband in any essential detail.

This episode commenced the father's twelve month de facto custody of the older son. During the seven months prior to the filing of the wife's amended motion, there was apparently no court action on the pending motions. The wife continued with her plan to remove from the area. The property settlement contained a provision that neither party could remove the children from the state. The wife wished to return to North Carolina but, because of the agreement, sought to relocate in Kansas City. In doing so, she attempted to prevent her former husband from discovering where she was living.

On one of her moving trips to Kansas City, she noticed her husband following her

outside Lee's Summit. He followed her into the Highway Patrol parking lot, where she locked all the car doors to prevent him from taking the younger son, which he threatened to do. She fled to the Highway Patrol offices followed by the husband and was met by some officers to whom she explained the custody decree and petitions currently on file. The officers detained the husband, and the wife left. This episode was confirmed by one of the officers.

She thereafter concealed her address until ordered to reveal it by court order; and after doing so, the husband visited once to bring a Christmas present to the younger son. The wife's mother had come from North Carolina to help take care of the son while the wife worked.

The husband presented the evidence of a counseling psychologist. This witness had apparently seen the mother, father, and oldest son prior to the dissolution. The witness felt the boy needed a masculine image with which to associate and that the boy appeared to be passive and suffering from overprotectiveness from the mother.

The wife, according to this witness, was apprehensive, tearful, and very loving and concerned. She appeared to be having difficulty adjusting to the divorce and exhibited anger toward the husband.

The husband was an aggressive, domineering type individual who was very sociable and active—very concerned about both his business and his son. The witness recommended the older boy be in a home with a strong masculine role present. However, in response to questions from the court, he conceded the boy could also be passive and shy living in a relationship with a dominant figure.

The court then interviewed the older son, Don, Jr., in chambers. The son testified that he was 15 years old and in the ninth grade. He was affectionate toward his little brother and liked him, but did not see any advantage in the two of them staying in the same place. His testimony reflected

that his inclination was to be with his father, and he did not express a very strong attachment to his mother.

The court entered judgment the day of the hearing. In the light of the issues to be decided, the judgment cannot be paraphrased. Eliminating formalities, it reads:

"*Judgment* On this 15th day of March, 1979, parties appear ... ready for trial on the merits of Petitioner's Application for Contempt and on Motion of each party to Modify Divorce Decree. Parties are aware that there are certain matters and motions that have not been ruled on, but they do not go to the merits and being aware of those matters and motions, parties and their attorneys announce ready for trial on the above entitled issues. ... Respondent's Motion ..., with respect to parties two minor children overruled. Petitioner's Motion ... with respect to increase of child support and removal of children from State ... denied. Respondent is not ordered to pay back child support for Donald Feese, Jr. during the time he was in the custody of his father, the above named Respondent.

Respondent is ... to pay attorney fees ... [for wife]:

On Mr. Kelso Journey's fee of $4,641.00, the sum of $3,200.00.

On Mrs. Janice P. Noland's fee of $2,150.00, the sum of $1,600.00. Said sums to be paid directly to Mr. Journey and Mrs. Noland. Costs taxed against Respondent.

Respondent is found guilty of contempt and, in view of order for him to pay attorney's fees, counsel and costs, his punishment is fixed at a fine of $10.00."

The contempt issue and the allowance of attorney's fees are not questioned on the cross appeals. The husband raises only the custody issue. The wife raises the custody issue, the denial of permission to leave the state, and what she characterizes as "the retroactive modification of the support order."

Ordinarily, a case presenting an issue of custody would be resolved by considering the evidence pursuant to the recognized standards of appellate review. This is not an ordinary case, however, because of events that have occurred subsequent to the questioned custody order. The first of these occurrences was the proceeding in this court for a writ of habeas corpus, brought by the wife to obtain physical custody of the older child. The proceedings in this court are, of course, within the scope of the recognized principle of judicial notice, that a court will notice its own proceedings and records.

The second occurrence affecting this case is a proceeding in the Jackson County Circuit Court Juvenile Division affecting a change of custody of the older child. This latter occurrence emerged during oral argument of the case, and both parties have stipulated that it may be considered by this court.

The hearing court rendered its judgment on March 15, 1979, and two weeks later, on March 29, 1979, the wife filed a writ of habeas corpus in this court seeking to enforce the custody order. Under the writ process in this court, the mother was, by order of this court, given custody of the older child consistent with the original decree and the ruling of the hearing court on the motions to modify. The order was issued in WD30828 on April 4, 1979.

On April 6, 1979, the older boy turned himself in to the Juvenile Officer in the area of his father's home. The case was handled as a runaway and reported to the Juvenile Division of Jackson County. The boy was placed in foster care for about ten days. The natural mother filed a complaint, and the boy was placed in detention. Extensive investigation and a hearing were conducted. The child was represented, as were the mother and father. The juvenile judge ordered the child taken under the continuing jurisdiction of the Juvenile Court and directed his custody be placed with the father, subject to supervision of the Juvenile Court and visitation by the natural mother. The supervision has been transferred to the juvenile officer having jurisdiction where the boy resides with his father. The supervision reports, home study reports, school progress reports, and the evaluation of a psychologist reporting to the court all indicate the oldest son is doing very well in his present situation.

The Juvenile Court undoubtedly had the power to assume jurisdiction. Section 211.031 RSMo 1978; *State ex rel. Dubinsky v. Weinstein*, 413 S.W.2d 178 (Mo. banc 1967). The proceedings in the Juvenile Court have rendered the issue of custody, as it relates to the oldest boy, moot on this appeal.

Evidence of the best interest of the younger son is sparse. The younger son was almost 4 years old at the time of the hearing and is now 5½ years old. He spent the first three years of his life in the Lake Ozark area, but has resided in Kansas City since then. His mother has had the sole custody of him since the dissolution when he was 1½ years old, except for the father's visitation.

His mother has had him in pre-schools since he was 29 months old, and he has resided with her in Kansas City since May, 1978. His father has been to see him twice since then. His relationship with his mother was good; there is no testimony either way as to his relation with his father, although his father consistently exercised his visitation rights while the child lived in the Ozark area.

On the whole, it does not appear that the husband has sustained his burden in attempting to change the custody of the younger child. The only relevant change in circumstances is the move of the mother to Kansas City while the child was 3 years old, and it is doubtful under the circumstances that this change had much effect on the younger son considering his age and home environment up to that time. "There is value in a child's being kept with the parent

who now has custody as against uprooting her [him] and transplanting her [him] in a new home." *Schmidt v. Schmidt*, 591 S.W.2d 260, 262 (Mo.App.1979).

While it is true that absent special circumstances a child should not be separated from his sibling, *Ray v. Ray*, 535 S.W.2d 267 (Mo.App.1976), the court has the power to award separate custody where it is in the best interests of the children, *Ray, supra*. Here, such circumstances appear to exist; the trial court award of the custody of the younger son to the wife is in the best interests of the children. The separation of the children was necessarily involved in the adjudication in the Juvenile Court. Nothing appears in this record to support a reversal of the trial court orders as to the custody of the younger child.

The wife on this appeal also attacks the trial court's order denying her request for a limitation of visitation. Despite the wife's contention that § 452.410 (the *custody* modification statute) applies, it is obvious that § 452.400 (the *visitation* modification statute) governs here. It is true that both statutes emphasize the best interests of the child, but the underlying statutory requirements for a change of custody to a change of visitation rights are quite different.

Section 452.400(2) states that a court "shall not restrict (previously granted) visitation rights unless it finds that the visitation would endanger the child's physical health or impair his emotional development." *L. L. T. v. P. A. T.*, 585 S.W.2d 157 (Mo.App.1979).

The wife, as petitioner, has the burden of demonstrating that continued visitation would endanger or impair the children's physical and mental health. *Cissell v. Cissell*, 573 S.W.2d 722 (Mo.App. 1978). The order is moot insofar as it is directed to the oldest boy, the Juvenile Court having assumed and exercised jurisdiction as to the mother's right of visitation.

There was little, if any, testimony concerning the younger son's relationship with his father, and a thorough review of the record fails to reveal any evidence that continued visitation would endanger the younger son. In light of the fact that the wife attacks the denial of her motion to restrict custody on the grounds that it is against the weight of the evidence, the *Murphy* standard precludes a reversal of this part of the trial court's judgment.

In light of the fact that there is no evidence of unfitness of either parent and that the best interests of the children are served by exposure to both, in *Re Marriage of Bradford*, 557 S.W.2d 720 (Mo.App.1977), the denial of this part of the wife's motion is affirmed.

Based upon what has occurred, there is no reason to interfere with the trial court's denial of the wife's request to remove the children from the state. Permitting the wife to remove the younger child from the state at this time would only exacerbate the separation of the children. Jurisdiction continues in the trial court to review this situation in the light of the circumstances.

The wife has interpreted the portion of the judgment which refused to order the payment of the support arrearages a "retroactive modification of the support order," and asserts that such a modification is prohibited by the express language of § 452.370 RSMo 1978. The husband concedes that a retroactive modification is prohibited, but asserts that this is not a case of retroactive modification, but, rather, a case where the trial court used its discretion in determining the effective date of its decree. Thus, the issue, *as posed by the parties*, is whether the trial court has discretion in determining the date of effectiveness of a support decree modification.

Whether the trial court intended to modify the decree is questionable. The wife's request might have been taken by the trial court as an improper prelude to attempt enforcement of the money judgment by

contempt. Section 452.345, relating to proceedings for contempt upon failure to pay maintenance or support awards, is enforceable only by the prosecuting attorney after the court has exercised its discretion in ordering such payments to the circuit clerk. Here there was an existing judgment subject to execution, but no proceedings had been taken to require that payments be made to the circuit clerk.

The prior judgment was at all times subject to execution and the trial court may have felt it was unnecessary to reorder what had already been ordered. As a valid judgment, it was subject to enforcement under, inter alia, the execution statutes, Chapter 513 RSMo 1978, or the garnishment provisions of Chapter 525.

In light of these available procedures for enforcing the judgment, the denial of the request for "an order to the husband to pay the $250 a month he is in arrears" is not surprising. The efficacy of such an order is questionable, as there already existed an enforceable judgment for child support.

 Nor can the language of that part of the judgment relating to the requested order be reasonably construed as a modification of the support order. The judgment states "Respondent not ordered to pay back child support during time [son] was with his father." The language speaks only to the request made and does not purport to affect any specific payments of child support.

The validity of the order as a retroactive modification of a support order would raise a question of the proper construction of the statute cited by both parties, § 452.370 RSMo 1978. The statute provides "the provisions of any decree respecting maintenance or support may be modified only as to *installments accruing subsequent to the motion for modification and only upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable.*"

A construction of the statute will not be undertaken when the trial court's order may not even have intended such a modification. The parties have not changed their positions on this issue, and the question is still viable. If the parties desire, it can be presented to the trial court in a more orderly fashion permitting the trial court to consider the question and squarely decide the issue. In the event the issue is so presented, the following is stated for the guidance of the trial court.

Cases which have stated either directly, indirectly, or in dictum that the modification under § 452.370 may be effective as early as the date of filing are: *Brown v. Brown*, 537 S.W.2d 434 (Mo.App.1976); *Hallums v. Hallums*, 585 S.W.2d 226 (Mo.App. 1979); *Miller v. Miller*, 599 S.W.2d 237 (Mo. App.1980).

The following cases have stated directly, indirectly, or in dictum that a modification may only be effective as of the date of the hearing: *LoPiccolo v. LoPiccolo*, 581 S.W.2d 421 (Mo.App.1979); *Seelig v. Seelig*, 540 S.W.2d 142 (Mo.App.1976); *Swift v. Leonard*, 420 S.W.2d 53 (Mo.App.1967); *Houston v. Snyder*, 440 S.W.2d 156 (Mo.App.1969); *Jenkins v. Jenkins*, 453 S.W.2d 619 (Mo.App. 1970).

Judgment affirmed.

All concur.