Randy Gale JOBE,
Petitioner-Appellant-Respondent,

v.

Rita Lynn JOBE,
Respondent-Appellant-Respondent.

Nos. 14013, 14025.

Missouri Court of Appeals,
Southern District,
Division One.

March 24, 1986.

C. Ronald Baird, Dorr and Baird, P.C., Springfield, for Rita Lynn Jobe.

W. Henry Johnson, Douglas, Douglas & Johnson, Neosho, for Randy Gale Jobe.

FLANIGAN, Judge.

This action for dissolution of marriage was instituted by Randy Gale Jobe against his wife Rita Lynn Jobe. The parties, who will be referred to by their first names, were married on September 16, 1977. A son Daniel was born October 1, 1980, and a daughter Amanda was born February 6, 1983. The parties separated on June 6, 1984. The trial was held on October 8, 1984, and the court entered a decree disposing of the property,[1] and awarding Rita maintenance in gross in the sum of $1,200, payable at $200 per month with the last payment due April 1, 1985. The court awarded primary custody of Daniel to Randy and primary custody of Amanda to Rita, ordered Randy to pay Rita $100 per month for child support, granted to each spouse liberal visitation rights with respect to the non-custodial child, and ordered Randy to pay $635 in attorney's fees for Rita. Both Rita and Randy appeal.

Randy challenges the trial court's disposition of the property. Rita challenges the "split custody" provision of the decree and argues that she should have been awarded primary custody of both children. Randy's appeal will be considered first.

Randy claims, in general, that the trial court erred in (1) distributing the Granby property, which is the family residence, to Rita, (2) placing a value of $5,000 on Randy's claims for personal injury and property damage, (3) awarding the farm equipment to Randy, (4) treating the five-acre tract as Rita's separate property rather than as marital property, and (5) not giving Randy his fair share of the marital property.

Randy was previously married and that marriage was dissolved in December 1976. During the former marriage Randy lived in a house on Walnut Drive in Neosho. The Walnut Drive property was purchased for $8,000 and the title to it was initially held by Randy's parents. Apparently the entire purchase price was financed, for Randy testified that, prior to his marriage to Rita, Randy paid "$3,000 to $4,000" on that mortgage and reduced the balance to

1. Trial court's property division:

| Randy | | Rita | |
|---|---|---|---|
| Separate property: | | Separate property: | |
| Misc. personal property | $2,325.00 | Misc. personal property | $ 900.00 |
| | | Five-acre tract | 5,000.00 |
| | | | $5,900.00 |
| Marital property: | | Marital property: | |
| Three vehicles | $2,750.00 | Granby property | $40,000.00 |
| Insurance policy | 1,620.00 | Misc. household goods | 2,675.00 |
| Misc. personal property | 1,315.00 | Automobile | 3,000.00 |
| Building & Loan account | 200.00 | Bank account | 200.00 |
| Farm equipment | 3,800.00 | | $45,875.00 |
| Claim for personal injury and property damage | 5,000.00 | | |
| | $14,685.00 | | |
| Debts Assigned to Randy: | | Debts Assigned to Rita: | |
| Randy's parents | $13,955.53 | Mortgage on home place | $25,562.61 |
| Other | 1,805.32 | Mortgage on automobile | 2,288.96 |
| | $15,760.85 | Other | 645.54 |
| | | | $28,497.11 |

"4,500 to $5,000" by the time he married Rita. On September 1, 1979, Randy's parents, by general warranty deed, conveyed the Walnut Drive property to Randy and Rita, "husband and wife."

In February 1977, prior to her marriage to Randy, Rita bought a five-acre tract in Newton County. The purchase price was $5,000 and Rita obtained a purchase money loan in that amount, secured by her automobile and by the five-acre tract itself. Rita's payments on that loan reduced it to $4,400 before she married Randy. After that marriage the balance of the loan was paid with marital funds. Rita's evidence showed that the value of the five-acre tract at time of trial was $5,000 and Randy's brief, tacitly adopting that evaluation, states, "Randy is entitled to consideration of the $4,400 contribution to Rita's separate property [the five-acre tract]."

In October 1979 the "Granby property" was purchased by Randy and Rita for $36,-000. This was the "home place" consisting of the family residence and 28 acres. It is located "right across the road" from the five-acre tract. At the time the Granby property was purchased, Randy and Rita placed a second mortgage on the Walnut Drive property in order to make a $10,000 down payment on the Granby property. In 1982 Randy and Rita sold the Walnut Drive property for $19,500. They used $14,000 of that amount to pay the balance of the original mortgage on the Walnut Drive property and to pay the second mortgage on it which had secured the $10,000 down payment on the Granby property.

Throughout their marriage, both Randy and Rita were employed. Randy is an accountant and works for a health care service in Webb City. At time of trial Randy's monthly "take home" pay was approximately $1,280. Rita was employed at a manufacturing company in Granby and her monthly "take home" pay was approximately $700.

Randy's first point is that the trial court erred in distributing to Rita the Granby property as a portion of her share of the marital property. Randy argues that the trial court should have ordered the sale of the Granby property or should have awarded Randy a lien on it. Randy's brief states: "Randy's separate contribution, from him or from his parents, to the marital estate from the Walnut Drive property, amounted to $13,500, of which $10,000 could be traced to equity in the Granby property."

Although the trial court made certain voluntary findings of fact, none pertinent here, neither side requested the trial court to give "a statement of the grounds for its decision," or to include finding "on such controverted fact issues as have been specified by counsel." See Rule 73.01.[2]

The Walnut Drive property was sold by the parties before this action was commenced. Randy argues, in effect, that *he* brought the Walnut Drive property into the marriage and that the trial court failed to give due weight to that fact.

The primary difficulty with Randy's contention is that it lacks factual support. Randy stated, on cross-examination, that at the trial of his first divorce action, which took place in December 1976, he gave testimony that the Walnut Drive property was owned by his parents, and not by Randy, and that he was merely renting it from his parents. Inferentially that rent consisted of the mortgage payments, which Randy made. Further, in 1979, during the instant marriage, Randy's parents conveyed the Walnut Drive property to Randy and Rita jointly. The record fails to show any payment to Randy's parents for that conveyance.

Section 452.330.2 reads, in pertinent part: "For purposes of §§ 452.300 to 452.415 only, 'marital property' means all property acquired by either spouse subsequent to the marriage except: (1) property acquired by gift, bequest, devise or descent."

Section 452.330.3 reads:

---

**2.** All references to rules are to Missouri Rules of Court, V.A.M.R., and all references to statutes

are to RSMo 1978, V.A.M.S.

"All property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation is presumed to be marital property regardless of whether title is held individually or by the spouses in some form of coownership such as joint tenancy, tenancy in common, tenancy by the entirety, and community property. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection 2."

In *Forsythe v. Forsythe,* 558 S.W.2d 675 (Mo.App.1977), a dissolution proceeding, the parents of the wife conveyed, as a gift, land to the parties as husband and wife. The land was sold and the proceeds were invested in securities registered to both parties. The trial court set aside the securities to the wife as her separate property. On the husband's appeal, the court of appeals held that the trial court should have treated the conveyance as a gift to *both* the husband and wife, and that the proceeds of the sale of the land should have been treated as marital property.

At p. 678 the court said:

"Ordinarily, in the absence of ambiguity, the language of the deed controls as to the intent of the grantor.... Section 452.330.3 departs from this general rule and authorizes a court to look behind the deed of a property acquired during the marriage [and so presumptively marital property] to determine if it was acquired by a method listed in § 452.330.2 [e.g. as by a gift to either spouse] and so exempt from division. Therefore, this statute authorized the wife to adduce evidence to overcome the marital property presumption. In this case, however, her proof had to surmount yet another presumption: that a conveyance to a husband and wife results in a joint ownership by the entirety.... That is to say, for the wife to fall within the gift exception of the statute and thus overcome the marital property presumption, she had first to overcome the presumption of joint ownership created by the language of the deed—and

that by clear and convincing evidence that the conveyance was intended for her title alone." (Case authorities omitted.)

The record contains no "clear and convincing evidence" that the conveyance by Randy's parents was intended for Randy's benefit alone. The trial court properly could have found that Randy's making of the mortgage payments, prior to his marriage to Rita, was simply rent paid for his own benefit. This court later holds, in making an overall review of the distribution of the marital property, that the trial court did not abuse its discretion in distributing the Granby property to Rita, free of any lien in favor of Randy. Randy's first point has no merit.

Randy's second point is that the trial court erred in placing the value of $5,000 on Randy's claims for personal injury and property damage because "said claim was unliquidated and contingent and as such had a value that was highly speculative." The claims arose during the marriage. Randy makes no objection to the trial court's classification of the claims as marital property. The classification was proper. *McClement v. McClement,* 681 S.W.2d 500, 502 (Mo.App.1984).

The statement of facts portion of Randy's brief makes no mention of the testimony concerning the personal injury and property damage claims. This point has not been preserved for appellate review. Rule 84.04(c). A gratuitous examination of the record shows that Randy gave the following testimony: "I had a wreck in the Volkswagen and was hurt. Mr. Johnson is representing me on a personal injury claim and a claim for property damage to the Volkswagen. My medical bills were $500 to $800 and I had a loss of income of approximately $100. I had to hire someone to do farm work—about $180. They issued the other person a ticket and there is no question that it was his fault. There has been no settlement. I am claiming $2,400 property damage to the car. I have been told that the total of the car and injury claim will come out about $5,000." No plain error appears in the trial court's

evaluation of the claims. Randy's second point has no merit.

■ Randy's third point is that the trial court erred in awarding the farm equipment to Randy "because the undisputed evidence indicated that the farm equipment belonged to Randy's parents."

According to Randy's Exhibit 9, starting as early as 1979 and continuing into or past 1983, Randy's parents wrote checks to Randy, some of which Randy used to buy $3,800 worth of farm equipment. Some checks were made directly to the implement dealers. The trial court treated the farm equipment as marital property and set it aside to Randy.

Rita testified that she was aware that Randy borrowed some money from his parents, that she was not consulted about the loans, and that she did not know that the loans exceeded $13,000. She said that "a lot of things Randy got whether I would say 'yes' or 'no.' ... If we ran out of money Randy knew his parents were always there to give it to him.... If this hadn't come up, I don't think the loan from Randy's parents would ever be paid.... If we were still married Randy would not have made any effort to pay the debt back."

With respect to the farm equipment, Rita said: "That belongs to his parents. It's their stuff. I am not trying to get it back. They paid for it. I acknowledge that it was in fact borrowed and it has not been paid back."

Randy's point is that the trial court erred in distributing the property to Randy. It may well be that the trial court should not have assumed jurisdiction over the farm equipment, but it is difficult to see how that assumption prejudiced Randy because the property was distributed to him. If he wants to turn it over to his parents, with whom he has a close relationship, he is at liberty to do so.

Rita's testimony concerning the looseness of the loan arrangements between Randy and his parents could well justify the inference that the checks used by Randy in buying the farm equipment were, at least when delivered, gifts rather than loans from his parents. With respect to Randy's third point, this court holds that the trial court committed no error prejudicial to Randy in awarding him the farm equipment.

Randy's fourth point is that the trial court erred in setting aside to Rita, as her separate property, the five-acre tract for the reason that marital funds were used to pay $4,400 of its purchase price of $5,000. Randy relies upon the "source of funds" rule adopted by the supreme court in *Hoffmann v. Hoffmann*, 676 S.W.2d 817 (Mo. banc 1984). Rita's brief concedes, at least tacitly, that Randy's contention is valid if the source of funds rule applies to this action, but argues that the opinion in *Hoffmann* was "probably not published until after the trial date."

After Rita's brief was filed in this court, the supreme court held the "source of funds rule" as announced in *Hoffmann* should be retrospectively applied, *Sumners v. Sumners*, 701 S.W.2d 720, 725[2] (Mo. banc 1985), and that it applied to a dissolution action, like the present one, which was pending on appeal at the time of the *Hoffmann* decision although tried "prior to its advent." *Sumners*, at p. 720. In *Sumners* it was necessary to remand the proceeding to the trial court because the record had not been developed sufficiently to permit application of the source of funds rule. The instant record is not deficient in that respect.

The five-acre tract is unimproved pasture. It was purchased for $5,000, is now clear, and its value is unchanged. Six hundred dollars, or 12 percent of the purchase price, was paid by Rita prior to the marriage and $4,400 or 88 percent, was paid with marital funds. Under the source of funds rule, 88 percent of the value of the five-acre tract should have been classified as marital property and 12 percent as Rita's separate property. Of course the trial court had no way of anticipating the rule in *Hoffmann*. Randy's fourth point has merit but, for reasons set forth in the

discussion of Randy's fifth point, does not require remand.

Randy's fifth point, which is related to his first four points, asserts that he did not receive his fair share of the marital property. Section 452.330.1 governs the disposition of property in a dissolution proceeding. That statute reads, in pertinent part:

"[T]he court shall set apart to each spouse his property and shall divide the marital property in such proportions as the court deems just after considering all relevant factors including:

(1) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

(2) The value of the property set apart to each spouse;

(3) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children; and

(4) The conduct of the parties during the marriage."

The property division made by the trial court is set forth in footnote 1. The trial court, understandably unaware of the requirements of *Hoffmann*, should have treated, as Rita's separate property, only $600 of the $5,000 value accorded the five-acre tract. Thus, properly, Rita's separate property had a total value of $1,500.

Without regard to the encumbrances against some of them, the marital property, including $4,400 of the value of the five-acre tract, totaled $65,140. If the trial court's division is permitted to stand, Randy will receive $14,685 of that amount and Rita will receive $50,455.

The debts assigned to Rita, from which Randy is to be held harmless, total $28,497.11. Thus the net value of the marital funds received by Rita is $21,957.89. Rita's debts are unquestionable. The debts assigned to Randy, from which Rita is to be held harmless, total $15,760.85. However, $13,955.53 is owing, at least allegedly, to Randy's parents, who have made no effort to collect any portion of them. Some of those debts were over five years old at time of trial. Randy's mother testified that "Randy would repay whenever he was able; we did not discuss interest." The trial court did not have to believe that testimony and could have drawn the reasonable inference that Randy's obligation to his parents was, at least to some extent, fictitious. If the parental debt is accorded its full alleged value, it is true that the debts assigned to Randy exceed, by $1,075.85, the value of his share of the marital property. On the other hand, if the entire parental debt is fictitious, Randy's share of the marital property has a value of $12,879.68.

Section 452.330 sets forth four specific factors the trial court must consider, together with all other relevant factors. Both Randy and Rita worked during the marriage. Randy's brief, except for his rejected first point and his accepted fourth point, makes no claim that his contribution to the acquisition of the marital property exceeded that of Rita. The value of the property set apart to each spouse has been previously stated. Randy's economic circumstances are more favorable than those of Rita. Randy has a college education and is gainfully employed as an accountant. His income substantially exceeds that of Rita, who is employed as a laborer in a pants factory in Granby. Randy's take home pay of $1,280 per month substantially exceeds Rita's $700 counterpart. The record justified the trial court in finding that the Granby property, the family residence, should be awarded to Rita as custodian of Amanda. The matter of Daniel's custody will be considered later.

■ Randy does not accuse Rita of any misconduct. Rita had no direct evidence of misconduct on the part of Randy, although there was some evidence of Randy's close friendship with a female business associate. In light of the foregoing factors, and the nature of the assets under scrutiny, this court concludes that the record does

not justify a redistribution of the property. See *Pratt v. Pratt*, 691 S.W.2d 441, 444[2] (Mo.App.1985); *Brown v. Brown*, 664 S.W.2d 268, 269[2] (Mo.App.1984). Randy's fifth point has no merit and Randy is denied relief on his appeal.

As her sole contention on her appeal, Rita asserts that the trial court erred in awarding the custody of Daniel to Randy, in that the splitting of the custody of the children was not in their best interest "because the children are both under the age of four and Rita is a fit custodian"; "Rita has a stable home environment, good parenting skills, good morals, was the primary caretaker during the children's lives and has the ability and time to care for and raise the children."

Section 452.375.2 reads:

"The court shall determine custody in accordance with the best interests of the child. The court shall consider all relevant factors including:

(1) The wishes of the child's parents as to his custody;

(2) The wishes of a child as to his custodian;

(3). The interaction and interrelationship of the child with his parents, his siblings, and any other person who may significantly affect the child's best interests;

(4) The child's adjustment to his home, school, and community;

(5) The mental and physical health of all individuals involved; and

(6) The needs of the child for a continuing relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child."

Section 452.375.3 reads, in pertinent part:

"As between the parents of a child, no preference may be given to either parent in the awarding of custody for the sole reason that the parent is the mother or the father of the child, nor because of the age or sex of the child...."

In the absence of exceptional circumstances, Daniel and Amanda should not be separated. *Atwood v. Atwood*, 664 S.W.2d 673, 674[2] (Mo.App.1984); *In re Marriage of Mihalovich*, 659 S.W.2d 798, 801[4] (Mo.App.1983); *C.A.Z. v. D.J.Z.*, 647 S.W.2d 895, 896[2] (Mo.App.1983); *Cochenour v. Cochenour*, 642 S.W.2d 402, 404[1] (Mo.App.1982); *Feese v. Feese*, 613 S.W.2d 882, 887[3] (Mo.App.1981); *Ray v. Ray*, 535 S.W.2d 267, 268[3] (Mo.App.1976). Although such is the general rule, the same authorities hold that the trial court has the authority to order split custody if the splitting is in the best interest of the children. In varying circumstances, decrees splitting the custody of children have been affirmed, *Roberts v. Roberts*, 668 S.W.2d 249 (Mo. App.1984); *Atwood v. Atwood*, supra; *Cochenour v. Cochenour*, supra; *Fastnacht v. Fastnacht*, 616 S.W.2d 98 (Mo.App.1981); *Feese v. Feese*, supra; *In re Marriage of Hayden*, 588 S.W.2d 165 (Mo.App.1979); *In re Marriage of Kuhn*, 581 S.W.2d 112 (Mo. App.1979), or reversed, *In re Marriage of Mihalovich*, supra; *C.A.Z. v. D.J.Z.*, supra; *Ray v. Ray*, supra. In making provision for child custody, the trial court has broad discretion, *C.A.Z. v. D.J.Z.*, supra, at p. 896[1], and this court will not interfere with the trial court's decree unless the welfare of the children requires such interference. In awarding each parent the primary custody of one child, the trial court found each parent to be a fit custodian, *Ray v. Ray*, supra, at p. 268[3].

Application of the six factors specifically enumerated in § 452.375.2 to the record discloses the following: Rita wants primary custody of both children but Randy did not appeal from the split custody arrangement; because of their respective tender ages, neither child expressed any wish with regard to his custodian; the children have a good relationship with each other and with their mother, while Randy seems more attached to Daniel than to Amanda; both children are reasonably well adjusted to their home and their preschools; both parents and both children are in good health but Randy's parents, who have frequent custody of Daniel, are not in

good health; both children need a continuing relationship with both parents; Rita is willing and able to perform her function as their mother while Randy has an obvious preference for Daniel.

The following additional factors favor placing primary custody of both children with Rita: Daniel, now five, and Amanda, now three, are close together in age and get along well together; Rita's work schedule permits her to be with the children more than does Randy's; Rita has regular work hours and is home by 4:00 p.m. every work day; she works in Granby where the family home is located; Randy lives in Neosho and commutes every work day to Webb City, his place of employment; Randy is on call one weekend a month and works late at least one night a week; he has occasional out-of-town seminars; when Randy has custody of Daniel, during each work day Randy's parents must pick Daniel up at his preschool and keep him from 4:00 p.m. to 6:00 p.m. until Randy gets home; until the parties separated, the children had more contact with Rita than with Randy because of Randy's job requirements; Rita seems to have more financial sense than Randy, although her income is less; Randy seems inclined to spend beyond his means, aided by indulgence of his parents; Rita lives in the family home, while Randy lives in a one bedroom apartment and depends upon his parents to provide some facilities, including laundry; although both Rita and Randy work and require daily babysitting, Amanda's day care facility is a licensed one while Daniel's is not.

On the other hand, the following factors lend support to the trial court's decree in splitting the custody: Both Randy and Rita are fit parents; Daniel was evidencing some signs of stress while with Rita and they seem to have improved since he has resided with Randy; there is a close bond between Daniel and Randy, and Daniel seems more responsive to discipline from Randy than from Rita; Randy's work hours may be somewhat more flexible than Rita's; liberal visitation rights provided with respect to both children permit them to be together two days per week, on week-

ends and holidays, and during much of the summer; the split custody has now existed for almost two years.

■ This court is reluctant to interfere with the trial court's arrangements concerning custody. A review of the entire record leads this court to the conclusion, however, that there are no exceptional circumstances justifying the separation of Daniel from his sister Amanda. Daniel is only 28 months older than Amanda. It is important to both of them that they have the benefit of living with each other in the same household. This court holds that it is in the best interest of both children for Rita to have primary custody of both children, although Randy should retain, with respect to Daniel, the same liberal visitation rights which the trial court accorded him with respect to Amanda. Rita's appeal is meritorious.

Those portions of the judgment which award custody of Daniel Gale Jobe to Randy Gale Jobe are hereby reversed and the cause is remanded with directions to the trial court to award custody of Daniel Gale Jobe to Rita Lynn Jobe and to order Randy Gale Jobe to pay to Rita Lynn Jobe the sum of $125 per month as and for child support for the support of Daniel Gale Jobe. The $125 monthly payment for the support of Daniel Gale Jobe shall be made on the same date as the $100 monthly payment is due with respect to Amanda Lynn Jobe, but no $125 payment shall be due until this court's mandate is received in the trial court. Randy Gale Jobe is hereby ordered to execute the same type of assignment, with respect to the monthly payment provided for Daniel Gale Jobe as was required with respect to Amanda Lynn Jobe, except that said new assignment shall be in the amount of $125 per month. In the event that Randy Gale Jobe fails to execute the required assignment within 10 days after the receipt of this court's mandate by the trial court, the latter court shall enter such assignment of income in favor of Rita Lynn Jobe. The specific visitation rights awarded by the decree of October 8, 1984,

to Randy Gale Jobe with respect to Amanda Lynn Jobe are hereby granted to Randy Gale Jobe with respect to Daniel Gale Jobe. In all other respects the judgment is affirmed. It is so ordered.

TITUS, P.J., and GREENE, J., concur.