

# In the
# Missouri Court of Appeals
## Western District

JENNIFER L. COX,

          **Respondent,**

v.

WENDELL D. COX,

          **Appellant.**

**WD79506**

**OPINION FILED:**

**December 6, 2016**

---

**Appeal from the Circuit Court of Cole County, Missouri**
**The Honorable Daniel Richard Green, Judge**

**Before Division Three:**
**Alok Ahuja, P.J., Victor C. Howard, and James Edward Welsh, JJ.**

Wendell D. Cox ("Father") appeals the circuit court's judgment dissolving his marriage to Jennifer L. Cox ("Mother"). Specifically, he contests the court's decision to adopt a parenting plan that separates the parties' three children for prolonged periods of time. We affirm.

## Background

In June of 2015, the circuit court held a hearing on Mother's petition for dissolution of marriage. Viewing the evidence in the light most favorable to the judgment,[1] the evidence showed that the parties were married on August 27, 1994, and separated around the time that

---

[1] *See Durbin v. Durbin*, 226 S.W.3d 876, 878 (Mo. App. 2007).

Mother filed her petition in July 2014. The parties' three children, Zachary, Hadley, and Sophia, were ages 15, 5, and 3, respectively, at the time of the dissolution decree. Prior to the parties' separation, the children lived with Mother and Father at the family home in Tipton. After filing her petition, Mother moved to Sikeston (about five hours away from Tipton), where her extended family lives and where she had obtained a job.

In August 2014, the circuit court held a hearing on the parties' motions for temporary custody and ordered that Sophia would reside primarily with Mother, and the boys, Hadley and Zachary, would reside primarily with Father. The temporary order also evidently[2] provided for specific periods of temporary custody for each parent. The court ordered no child support. The temporary order remained in place until the dissolution hearing on June 9, 2015. The parties testified at the dissolution hearing that they did not strictly follow the court's temporary order but, instead, allowed the children to spend more time together than what was ordered.

Both parties submitted proposed parenting plans at trial. Mother proposed that Zachary continue to reside with Father in Tipton and for Hadley and Sophia to reside with her. Mother testified that Father is a good parent and that his work schedule allows him flexibility in parenting the children. She believed, however, that the two youngest children need to live together and that they need to live with her due to their young ages. Mother told the court that Sophia often asks about Hadley and about when she will see him again. Mother acknowledged that Zachary (who was about to enter high school) wanted to continue living Tipton, where he is involved in sports and gets good grades, and she agreed that that would be best for him.

Father's proposed parenting plan called for all three children to reside with him based on his belief that the siblings need to be together. He pointed to Zachary's testimony that being

---

[2]The record does not contain a copy of the circuit court's temporary custody order.

2

separated from Sophia has been difficult and that the younger children look up to him. Father testified that he has concerns about Mother's judgment and the impact of her life choices on the children. He noted that Mother is involved in a relationship with Matthew Vaughn (her high school boyfriend), who is incarcerated on a drug charge at the Tipton Correctional Center. Father also complained that Mother has not obtained treatment or medication for her depression, with which she was diagnosed after undergoing a psychological evaluation at Father's behest.

The circuit court rejected both parties' parenting plans and adopted its own. After making specific findings as to the statutorily required factors, the court awarded the parties "joint legal and physical custody" of the three children. The court's Parenting Plan called for Sophia to have extended parenting time with Mother and for Hadley and Zachary to have extended parenting time with Father, with specific periods of custody of all the children to each parent. In short, the children's living arrangements would be the same as the arrangement with which they had lived for the past year. The court rejected both parties' Form 14s and declined to award child support.

**Discussion**

In his sole point on appeal,[3] Father argues that the circuit court erred in "splitting the custody of the children" by awarding "residential custody" of Sophia to Mother and "residential

---

[3]This point, as we interpret it, asserts that the court's custody decision is both unsupported by substantial evidence and against the weight of the evidence. An "against-the-weight-of-the-evidence" claim is "separate and distinct" from a "not-supported-by-substantial-evidence" claim. *Fastnacht v. Ge*, 488 S.W.3d 178, 183-84 (Mo. App. 2016) (citations omitted). Thus, this single point asserts two legal bases for reversal. *Id*. at 184. A point that raises multiple claims of error violates Rule 84.04(d) and renders the point multifarious. *Id*. Generally, a multifarious point preserves nothing for review and is subject to dismissal. *Id*. Nevertheless, we will review Father's "lack-of-substantial-evidence" claim, *ex gratia*, but we decline to review his "against-the-weight-of-the-evidence" claim, which, in any event, is not properly raised. To properly raise such a claim, the appellant must:

> (1) identify a challenged factual proposition necessary to sustain the judgment; (2) identify all of the favorable evidence supporting that position; (3) identify contrary evidence, subject to the trial court's credibility determinations, explicit or implicit; and (4) prove in light of the whole record that the supporting evidence, when considered along with the reasonable inferences drawn therefrom, is so lacking in probative value that the trier of fact could not reasonably believe the proposition.

*Id*. at 183 n.5 (citation omitted). Father fails to properly follow these steps in his brief.

3

custody" of Zachary and Hadley to Father, "because there is no substantial weight" (sic) to support the ruling, "the weight of the evidence does not demonstrate the existence of exceptional circumstances warranting separating the children," and "splitting up the children is contrary to the children's best interest," in that "the children have lived together for most of their lives, have bonds with each other, miss each other, the parents live five hours apart, [and] Father is a good parent."

Before we can address the issues raised, we must address the nomenclature employed in this point relied on. First, the court did not award any party "residential custody" of any child. The court awarded joint custody of the children to the parents and devised its own parenting plan. This Court has addressed the necessity of using statutory language on numerous occasions. *See, e.g., Loumiet v. Loumiet*, 103 S.W.3d 332, 336-38 (Mo. App. 2003) (holding that, despite tendency of courts and lawyers to use such improper terms as "primary residential custody" and "primary physical custody" when "joint physical custody" was awarded, the only types of custody provided for in section 452.375.1(1)[4] are "joint legal," "sole legal," "joint physical," or "sole physical" or "any combination thereof"); *see also Robertson v. Robertson*, 228 S.W.3d 624, 625 n.1 (Mo. App. 2007); *Aurich v. Aurich*, 110 S.W.3d 907, 912 (Mo. App. 2003). Recently, the Eastern District of this Court reiterated: "For over ten years, our appellate courts have, without exception, sternly admonished the use of 'primary physical custody.'" *Morgan v. Morgan*, 497 S.W.3d 359, 366 (Mo. App. 2016). "'[C]ustody,' as defined . . . does not include 'primary physical custody' as a statutorily permissible physical custodial arrangement, only joint or sole physical custody[.]" *Id*. (citing *Loumiet*, 103 S.W.3d at 338). That Court further

---

[4]Statutory references are to the Revised Statutes of Missouri (RSMo) 2000, as updated by the 2013 Cumulative Supplement and the 2014 Non-Cumulative Supplement.

observed that "[t]he conundrum the foregoing terminology causes [our] courts cannot be overstated." *Id*. at 367. Neither will the Court be misled by reference to the section 452.375.5(1) designation of a parent's address for mailing and education purposes for a child as a substitute for arguing about "primary or residential custody." *See Loumiet*, 103 S.W.3d at 339-40. The ultimate issue in this case is whether the parenting time awarded the parties herein is in the best interest of the child. *See id*. at 340.

We also find Father's use of the term "split custody" unhelpful in this context.[5] It may be time to relegate the phrase to the dustbin of archaic phraseology with other terms like "primary custody" and "residential custody." *See id*. at 336-38. These terms cling to life and creep into parenting plans despite statutory irrelevance and this Court's admonition to the contrary.

Our standard of review for a dissolution of marriage case requires us to affirm the circuit court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).[6] In assessing the sufficiency of the evidence, we examine the evidence and its reasonable inferences in the light most favorable to the judgment, and we disregard all evidence and inferences to the contrary. *Durbin v. Durbin*, 226 S.W.3d 876, 878 (Mo. App. 2007). The "credibility of witnesses and the weight to be given their testimony is a matter for the trial court, which is free to believe none, part, or all of the testimony of any witness." *Noland-*

---

[5]The term may have some relevance in the context of calculating child support. *See* Comment D to Line 12 of Form 14.

[6]"The same standard of review applies in all types of court-tried cases." *Ivie v. Smith*, 439 S.W.3d 189, 199 (Mo. banc 2014). "Prior statements from this and other Courts to the effect that greater deference is paid to the trial court in certain types of cases (*e.g*., family law) than in others are incorrect and misleading" and "should not be read to mean anything more than that such cases often require the trial court to weigh a great deal of conflicting evidence before finding the highly subjective facts required by the applicable statutory factors." *Id*. at 199 n.9.

*Vance v. Vance*, 321 S.W.3d 398, 402 (Mo. App. 2010). "We do not reweigh the evidence, even if the evidence could have supported another conclusion." *Durbin*, 226 S.W.3d at 879.

In awarding substantial parenting time to both parents, the circuit court necessarily found that both parents are fit and proper persons to exercise joint legal and physical custody with specific periods of custody of all the children to each parent. *See In re Marriage of Barton*, 158 S.W.3d 879, 884 (Mo. App. 2005). If either parent was "unfit," the court would not have awarded that parent physical custody of any of the children. *See id.*

Father correctly notes that "[a] child's interrelationship and interaction with his or her siblings are relevant factors to consider in custody decisions," but "those factors must be weighed and balanced in light of an overriding concern for the best interests of the child." *See Noland-Vance*, 321 S.W.3d at 419; § 452.375.2. Thus, Father acknowledges that a trial court may order substantially different parenting time between the parents of the various siblings if such an arrangement is in the child's best interests, citing *Noland-Vance*, 321 S.W.3d at 418-20; *Durbin*, 226 S.W.3d at 880-81; *Barton*, 158 S.W.3d at 884; *Scott v. Steelman*, 953 S.W.2d 147, 150 (Mo. App. 1997); and *Jobe v. Jobe*, 708 S.W.2d 322 (Mo. App. 1986), *abrogated on other grounds by Mistler v. Mistler*, 816 S.W.2d 241 (Mo. App. 1991).

In four of Father's cited cases, the trial court concluded that circumstances and the children's best interests did warrant a similar custody arrangement, and the appellate court affirmed. *See Noland-Vance*, 321 S.W.3d at 418-20 (where evidence showed extreme parental alienation by mother against father and suggested that older siblings were causing younger siblings to be alienated from father); *Durbin*, 226 S.W.3d at 880-81 (where the trial court could reasonably have found it in the children's best interests for daughter to have a different parenting plan from her brothers); *Barton*, 158 S.W.3d at 884-85 (where the court found, due to their age

6

difference, older son's strained relationship with mother, and younger son's close relationship with mother, that differing parenting plans for each sibling was in his best interest); *Scott*, 953 S.W.2d at 150-51 (upholding parenting plan for daughter to be with father during school year because he placed a priority on her education, despite mother's claim that separating her from her half-siblings, who lived with mother, was not warranted).

Only in *Jobe*, where the trial court ordered the son to live with father and the daughter with mother, did the appellate court find that the trial court had erred in separating the children. 708 S.W.2d at 328-29. There, mother argued that "split custody" was not in the children's best interests "because the children are both under the age of four" and the circumstances did not warrant separating the children. *Id*. at 328. Quoting section 452.375.3, RSMo 1986 (now 452.375.8), mother noted that "no preference may be given to either parent in the awarding of custody [solely] because of the age or sex of the child." *Id*. The appellate court held that, while it is "reluctant to interfere" with a court's custody arrangements, no special circumstances justified separating the children, and the children's best interests dictated that mother have "primary custody of both." *Id*. at 329.

Here, Father contends that, as in *Jobe*, the decision to have Sophia reside with Mother over Father also "seems contrary to" section 452.375.8. *See id*. at 328. Father points to nothing in the record, however, to support his suggestion that the court's best interest analysis was based solely on the sex or age of the children, and we find no indication that it was. In sum, Father does not establish that *Jobe* is sufficiently analogous to be controlling in this case.

Where the parties have not agreed to a custodial arrangement, as in this case, section 452.375.6 requires the trial court to "include a written finding in the judgment or order based on the public policy in [§ 452.375.4] and each of the factors listed in [§ 452.375.2] detailing the

7

specific relevant factors that made a particular arrangement in the best interest of the child."

Under section 452.375.4, it is the declared "public policy of this state" that it is in a child's best

interest to have "frequent, continuing, and meaningful contact with both parents" after a marital

dissolution. Section 452.375.2 requires the court to make all custody decisions in accordance

with the best interests of the children and, in so doing, to consider "all relevant factors,"

including the eight factors listed in that subsection. Subdivision (3) of that statute specifically

directs the court's attention to the interaction and interrelationship of the child with his parents

and siblings. *See* § 452.375.2(3).

Here, the circuit court made specific findings as to each of the eight statutory factors and

concluded that its custodial arrangement was in the best interests of the children and provided

both parents frequent, continuing, and meaningful contact with the children. The court found:

> A. The Court has considered Section 452.375.2(1), RSMo, as to the parents'
> wishes, requests and recommendations made in the pleadings and at trial.
>
> Father requests the Court approve a plan of joint legal custody but sole physical
> custody. Mother requests the Court approve a plan of joint legal custody and joint
> physical custody as set out in her Parenting Plan. Although Mother moved from
> [the marital home], the parties have resided apart previously and even during the
> divorce they were able to communicate and share parenting time with the
> children. The[y] have lived approximately one year with two children in one
> home and one child in another. The court finds no compelling evidence from the
> trial to change that parenting plan. Father's evidence focused substantially on a
> friendship Mother has with another man who is in prison as a convicted felon.
> However, there was no convincing evidence that . . . that relationship affects the
> children or that it caused the breakdown of this marriage.
>
> This Court finds this factor favors neither party. The court has reviewed and
> considered both parenting plans submitted by the parties and finds that neither
> plan is in the best interest of the children. The Court sets forth and adopts its own
> parenting plan . . . ordering joint legal and physical custody of the children.
>
> While the custody decision which has the parties' three children living in both
> parents' homes [is] in essence a split custody arrangement, the court finds it is
> appropriate and in the best interests of the children in this case. The parties have
> relocated and lived apart (including the children) at various times during their

8

marriage. This has been due to Father's career and there is no guarantee that his job won't change again resulting in another relocation. Although there is travel involved for the parties and the children, the parties have shown an ability to work those issues out throughout their marriage and their separation of over a year living apart.

B. The Court considered Section 452.375.2(2), RSMo, as to the needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of the parents to actively perform their functions as mother and father of the children.

The Court finds that both parents are interested [in] performing their functions as mother and father and have the ability to do so despite their antipathy at times for each other. This factor favors neither party considering the children's best interest.

C. The Court considered Section 452.375.2(3), RSMo, as to the interaction and interrelationship of the child with the parents and any other person who may significantly affect the child's best interest.

The Court finds that the parties have no other children. Though it is unusual for this court to enter an order with siblings residing apart, in this case, the parties have both been actively involved in the parenting of the children and the younger two children, who might be most affected by the long term living without their siblings, are capable of frequent and meaningful time with their siblings under the parenting plan entered herein. Father points to Mother's taking a job and moving from [the family home] to the Sikeston . . . area, several hours' drive away. However, throughout the marriage it was Father's career choices that caused the children (with the parties) to relocate their residence multiple times including times when Father was not residing with Mother and children for months at a time. Therefore, the court finds that this factor favors neither party.

D. The Court considered Section 452.375.2(4), RSMo, as to which parent is more likely to allow frequent, continuing, and meaningful contact with the other parent. The Court finds that both parents are interested [in] performing their functions as mother and father.

Both parties presented evidence that calls into question the motives of the other party and how that might affect evaluation of this factor. However, the parties, even living apart while this action was litigated, have been able to show they are each capable and likely of allowing frequent, continuing, meaningful contact with the children and the other parent. [T]his factor favors neither party at this time.

E. The Court considered Section 452.375.2(5), RSMo, as to the child's adjustment to the home, school, and community.

9

Though this factor favors Father as to the oldest child because he is school age and has already moved as a child during his school age years, the younger children are approaching school age and have family in the area where mother resides. [Thus], this factor favors neither party as to the younger two children. F. The Court considered Section 452.375.2(6), RSMo, as to the mental and physical health of all individuals involved, including any history of abuse of any individuals involved.

The Father made allegations about the Mother's mental health and the court ordered psychological evaluation of the parties. There was evidence about Father's physical health being some issue. However, even with those issues there was no evidence this court heard that this factor would have any effect on the best interests of the children. Therefore, this factor favors neither parent.

G. The Court considered Section 452.375.2(7), RSMo, as to the intention of either party to relocate the principal residence of the child.

Mother moved while this action was pending. Father has moved many times due to his career. However, neither party expressed the intent to relocate for the foreseeable future. [Thus], the Court finds this factor does not favor either party.

H. The Court considered Section 452.375.2(8), RSMo, as to the wishes of a child as to the child's custodian.

The Court finds there was evidence presented and considered significant only as to the oldest child and the Parenting Plan entered as a part of this Judgment reflects a custodial arrangement consistent with those wishes of the child. This factor favors neither party as to the younger two children.

While Father acknowledges that the circuit court properly addressed all the statutorily required factors, he claims, nevertheless, that there is no substantial evidence of any "exceptional circumstances" that would justify separating Sophia from her brothers and no substantial evidence that such a ruling is in the best interests of the children.

Father suggests, in his argument, that the circuit court ignored evidence that is favorable to him.[7] He points to Zachary's testimony that being separated from his sister has been difficult;

---

[7]Father also claims that the court erred in finding that "the parties had relocated and lived separate and apart due to Father's career and that there is no guarantee that his job won't change again." He suggests that this refers to the period during which the parties had separated pending dissolution of their marriage. It does not. The judgment actually states: "The parties have relocated and lived apart (including the children) at various times during their marriage. This has been due to Father's career and there is no guarantee that his job won't change again resulting in

to Mother's testimony that Sophia misses Hadley; to Mother's testimony that Father is a good parent and that she has no concerns about his ability to parent Sophia; and to evidence that the children have close connections to the Tipton community and have always been clean, properly dressed, and well behaved in his custody. In addition, Father points to the evidence that Mother has sought no treatment for her depression; that Mother had had an on-going relationship with Vaughn for at least four years of her marriage and moved to Sikeston to be closer to him when he was incarcerated at Farmington Correction Center; and that Mother and Vaughn are planning a life together, which will necessarily involve the children. According to Father, that evidence established that the parenting time arrangement adversely impacts the children.

In reviewing a custody award, we presume that the trial court considered all of the evidence. *Stangeland v. Stangeland*, 33 S.W.3d 696, 703 (Mo. App. 2000). We have no reason to believe that the court did not do so here, and the court's findings show that it did, in fact, consider the evidence that Father discusses. In any event, Father's argument disregards our standard of review, under which we view the evidence and its reasonable inferences in the light most favorable to the judgment and disregard all contrary evidence and inferences. *Durbin*, 226 S.W.3d at 878. Instead, Father presents the evidence in the light most favorable to himself and disregards substantial amounts of evidence favorable to Mother or unfavorable to him. Father would also have us ignore the trial court's credibility determinations, as well as its resolution of conflicting evidence. This we cannot do. We must defer to the trial court's superior ability to

---

another relocation." There was ample evidence to support that finding; thus, there is no merit to this complaint. Father also finds fault with the court's statement that "the parties have shown an ability to work [their travel] issues out through their marriage and their separation of over a year living apart." He argues that the parties were not "working out their [travel] issues" but, rather, were simply complying with the temporary custody order. We are not persuaded that this claim, even if true, in any way establishes that the court's custody decision was wrong.

11

assess witness credibility, and we will not substitute our judgment for that of the trial court "so long as credible evidence supports the trial court's beliefs."  *Noland-Vance*, 321 S.W.3d at 416.

As noted, the trial court properly considered all the factors in section 452.375.2 and found (as to the two younger children) that none favored either parent and that both parents could provide a suitable home for the children.  Here, the court explicitly found that "[w]hile the custody decision which has the . . . three children living in both parents' homes [is] in essence a split custody arrangement, ***the court finds it is appropriate and in the best interests of the children in this case***."  (Emphasis added.)

Based on our review of the record, we find that substantial evidence supports the court's best interests determination.  We defer to the trial court's determination of the weight to be given the conflicting evidence and its findings of highly subjective facts related to the statutory factors and affirm the circuit court's judgment.


/s/ JAMES EDWARD WELSH
James Edward Welsh, Judge

All concur.

12