

# In the Missouri Court of Appeals
# Eastern District

DIVISION FOUR

| | | |
|---|---|---|
| JAMIE MORGAN, | ) | ED103426 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court of |
| | ) | St. Charles County |
| v. | ) | 1011-FC04278-01 |
| | ) | |
| JUSTIN MORGAN, | ) | Honorable Jack Banas |
| | ) | |
| Respondent. | ) | Filed: August 30, 2016 |

This is an appeal by Jamie Morgan ("Mother") from the trial court's judgment modifying a previous judgment dissolving her marriage to Justin Morgan ("Father"). We affirm.

## BACKGROUND

On or about April 11, 2011, the marriage as between Mother and Father was dissolved pursuant to a consent judgment ("Dissolution Judgment") entered by the Circuit Court of St. Charles County. Therein, the court awarded Mother and Father joint legal custody of their two minor children born of the marriage: K.M. (then age 6) and O.M. (then age 4) (collectively, "Minor Children"). Additionally, Mother was awarded "primary physical custody . . . subject to [Father's] rights of temporary custody and visitation pursuant to the Parenting Plan." The Dissolution Judgment also awarded Mother $935 per month as and for the support of two children to be paid by Father.

Pursuant to the Dissolution Judgment, during the school year, Father was awarded physical custody of Minor Children every other weekend (beginning Friday at 6:00 P.M. and ending on Sunday at 6:00 P.M.) and one weekly visitation (beginning at 5:00 P.M. and ending at 8:00 P.M. on the same evening). During summer break, Father's weekly visitation converted to a weekly overnight visitation, in addition to the continued every other weekend schedule. Further, during summer break, Father was awarded six weeks (to be exercised in two-week intervals) of custody. Throughout the year, Mother and Father alternated holidays and birthdays. At all other times therein, Mother was awarded physical custody of Minor Children.

Two years after the entry of the Dissolution Judgment, on April 12, 2013, Father filed a motion to modify the Dissolution Judgment in which he sought sole legal custody, sole physical custody, and other relief. Mother filed a cross-motion to modify, seeking sole legal custody, a modification of father's visitation, and other relief. Mother also filed a cross-motion for contempt in which she sought, *inter alia*, interest on father's past-due child support. A Guardian *ad litem* was appointed ("GAL").

After trial, the trial court awarded, *inter alia*, Father sole legal and sole physical custody of Minor Children, with rights of visitation afforded to Mother ("Modification Judgment"). In effect, Mother was awarded almost the exact amount of physical custody as Father was previously awarded under the Dissolution Judgment. Furthermore, the Modification Judgment ordered Mother to pay Father $236 per month as and for the support of two children. Mother was also ordered to pay approximately $4,500 of Father's attorney's fees.

This appeal now follows.

**DISCUSSION**

Mother contends, in four separate points on appeal, the trial court erred in entering the Modification Judgment. Specifically, Mother claims the Modification Judgment improperly adjudicated physical and legal custody of Minor Children, child support arrears, and attorney's fees. We will discuss, in considerable detail, the particulars of each point throughout the analysis.

*Standard of Review*

The applicable standard of review requires this court to affirm the trial court's judgment unless it is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976); see also Dawson v. Dawson, 366 S.W.3d 107, 112 (Mo. App. W.D. 2012). The trial court's determination is given greater deference in child custody cases than in other cases. Huffman v. Huffman, 11 S.W.3d 882, 885 (Mo. App. W.D. 2000); Beshers v. Beshers, 433 S.W.3d 498, 505 (Mo. App. S.D. 2014) ("An appellant seeking to reverse a trial court's ruling concerning custody of a child has to overcome a high standard of review.").

The trial court is in a superior position to weigh all the evidence and render a judgment based upon that evidence; as such, the judgment is to be affirmed under any reasonable theory supported by the evidence. Love v. Love, 75 S.W.3d 747, 754 (Mo. App. W.D. 2002). "The trial court's determination of custody will not be disturbed on appeal unless this court is firmly convinced it is erroneous and the award is against the child's best interests[.]" Bather v. Bather, 170 S.W.3d 487, 492 (Mo. App. W.D. 2005).

3

*Analysis*

**Point I: Modification of Physical Custody**

In her first point on appeal, Mother contends the trial court erred in entering the Modification Judgment and ordering a change in sole physical custody of Minor Children from Mother to Father. Specifically, Mother maintains the trial court's determination is against the weight of the evidence, in that the trial court: (1) was "overly-influenced" by the GAL's recommendation regarding the appropriate school district for Minor Children; (2) relied upon "stale" evidence when assessing Minor Children's school attendance records; (3) failed to account for or give proper weight to Father's admission that Minor Children were succeeding in Mother's school district; (4) conferred undue weight to Father's testimony regarding the quantity of Mother's relocations since the Dissolution Judgment; (5) accorded undue weight to Mother's failure to provide Father's contact information to the Minor Children's schools; and (6) assigned undue weight to Mother's unanswered requests for admissions. Ostensibly, Mother's Point I argues the trial court erred in modifying the physical custody arrangement because said modification was not in Minor Children's best interest.

It should be noted that although not expressly set forth in a separate point on appeal, Mother also contends, via her analysis and argument under Point I, the trial court erroneously declared or applied the law in finding substantial change in circumstances as to Mother (the custodian under the Dissolution Judgment) or the Minor Children.[1] Specifically, Mother argues the trial court's finding of substantial change of circumstances related to Father, the non-custodial parent.

---

[1] Mother's Brief, in this regard, violates the "simple and mandatory" Rule 84.04(d), in that Mother fuses two distinct points. Palmore v. City of Pacific, 393 S.W.3d 657, 662 n.4 (Mo. App. E.D. 2013); see also Rule 84.04(d). Solely because Father elected not to file a Respondent's brief, we will review both of Mother's arguments which have been inappropriately merged under Point I, pursuant to this court's discretionary power.

4

**A. Physical Custody Modification Standards**

Initially, there appears to be significant confusion regarding the standard applicable to the modification of the physical custody at issue.  The confusion springs from both the complex nature of our custody statutes and appellate court attempts to create clarity in an area of law that is increasingly challenged by evolving societal standards.  We, herein, attempt to provide precision and simplicity for future trial courts and litigants confronted with motions to modify.

In Missouri, two distinct statutes "govern the modification of prior parenting arrangements."  Russell v. Russell, 210 S.W.3d 191, 196 (Mo. banc 2007); see Sections 452.410, 452.400.2.  The separate statutes give rise to differing standards regarding the modification of physical custody arrangements.  We will address each statute, and the modification standards springing therefrom.

*1. Modification Standards*

Section 452.410 governs the modification of child custody decrees.  Frantz v. Frantz, 488 S.W.3d 167, 175 (Mo. App. E.D. 2016) (citing Russell, 210 S.W.3d at 196).  Generally, a modification of a *child custody decree* can reasonably be interpreted to apply to those instances where a court is requested to modify the "custody" designation.  Prach v. Westberg, 455 S.W.3d 513, 516 (Mo. App. W.D. 2015).  A "custody" designation refers to joint legal custody, sole legal custody, joint physical custody, and sole physical custody.  See Section 452.375.1(1).

Pursuant to Section 452.410, when deciding a motion to modify a *child custody* decree, the trial court must engage in a two-step analysis.  In re Marriage of Swallows, 172 S.W.3d 912, 914 (Mo. App. S.D. 2005) ("That statute [Section 452.410.1] provides a two-step process that courts must follow when determining whether or not to modify an earlier custody order.").  First, as a threshold matter, a modification of a child custody decree is justified if "a change has

5

occurred in the circumstances of the *child* or his *custodian*" based upon "facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree[.]" Section 452.410.1 (emphasis added). Second, if the trial court finds a change of circumstances as to the child or his custodian, then the trial court must determine whether a modification "is necessary to serve the best interests of the child." Id; see also Tienter v. Tienter, 482 S.W.3d 483, 488-89 (Mo. App. E.D. 2016). A finding of a change in circumstances is a precursor to a finding that the best interests of the child necessitates modification. Tilley v. Tilley, 968 S.W.2d 208, 212 (Mo. App. S.D. 1998).

Typically, uncertainty and perplexity arise as to whether the parent seeking to modify must prove either a "change in circumstances" or a "*substantial* change in circumstances." See Russell, 210 S.W.3d at 196-98. Thus, the recognition of these two related, but distinct, standards implies Section 452.410 breeds two differing burdens of proof for purposes of motions to modify. The application of each depends on the modification sought, so as to conform to this State's declared public policy. We address the application of each burden of proof.

### *Section 452.410 Statutory Standard*

First, the "change in circumstances" burden of proof—or the "Section 452.410 Statutory Standard"—applies in those instances where the modification sought does *not* "deprive one custodial parent of custody altogether." Russell, 210 S.W.3d at 194. Accordingly, by definition, this "Section 452.410 Statutory Standard" applies in only two circumstances:

(1) **Joint Physical Custody to Joint Physical Custody**: When a joint physical custodial parent seeks to modify the physical custody arrangement, but requests that both parties remain joint physical custodians, the "Section 452.410 Statutory Standard" applies. Russell, 210 S.W.3d at 196 ("Thus, by definition, a modification of joint

6

physical custody is a custody modification, triggering the application of section 452.410.").

(2) **Sole Physical Custody to Joint Physical Custody**:  When one parent was awarded sole physical custody in the previous child custody decree (and the other parent was awarded visitation rights) and a motion to modify is sought to award both parents joint physical custody, the "Section 452.410 Statutory Standard" applies.  Strobel v. Strobel, 219 S.W.3d 295, 298 (Mo. App. W.D. 2007) ("[A]s our Supreme Court has recently clarified, the change in circumstances that must be shown need not be 'substantial' where, as here, the modification ordered is from sole custody to joint custody.").

The reasoning and logic of the "Section 452.410 Statutory Standard" is premised upon the long declared public policy of this State that children maintain "frequent, continuing and meaningful contact with *both* parents after the parents have separated . . . ."  Section 452.375.4 (emphasis added); see also Russell, 210 S.W.3d at 197 ("Today, joint physical and legal custody is the preference in dissolution actions.").

### *Section 452.410 Case Law Standard*

Second, the courts have added to the burden of proof in certain circumstances, requiring a "*substantial* change in circumstances"—or the "Section 452.410 Case Law Standard"—when the modification sought *does* "deprive one custodial parent of custody altogether."  Russell, 210 S.W.3d at 194.  Accordingly, by definition, this "Section 452.410 Case Law Standard," similarly, applies in only two circumstances:

(1) **Sole Physical Custody to Sole Physical Custody**:  When one parent was awarded sole physical custody in the previous child custody decree (and the other parent was

7

awarded visitation rights) and a motion to modify is sought to award the other parent sole physical custody, the "Section 452.410 Case Law Standard" applies. Russell, 210 S.W.3d at 197 ("A change from sole custody in one parent to sole custody in another parent is drastic, and courts rightly conclude that the modification must be based on a 'substantial' change.").

(2) **Joint Physical Custody to Sole Physical Custody**: When both parents were awarded joint physical custody in the previous child custody decree and a modification is sought to award only one parent sole physical custody (with rights of visitation to the other parent), the "Section 452.410 Case Law Standard" applies.

The reasoning and logic of the "Section 452.410 Case Law Standard" is premised not only upon this State's long declared public policy, supra, but also upon the "principles of *res judicata* and the concern for finality of judgments." Russell, 210 S.W.3d at 196. Such extensive modifications in physical custodial arrangements contradict the continuity that shall be valued for children, necessitating the implication of the legal principle of *res judicata* and, thereby, the more rigid burden of proof. Reeves-Weible v. Reeves, 995 S.W.2d 50, 57 (Mo. App. W.D. 1999) (children should not be uprooted from one environment to the next upon slight changes of the status of either parent).

### Section 452.400.2 Modification Standard

Section 452.400.2, in contrast, governs the modification of visitation or "parenting time." Timmerman v. Timmerman, 139 S.W.3d 230, 234 (Mo. App. W.D. 2004) (*en banc*) ("A change of visitation, on the other hand, is governed by section 452.400.2") (abrogated on other grounds); see also Potts v. Potts, 303 S.W.3d 177, 186 (Mo. App. W.D. 2010) ("Where the only issue, in

8

actuality, is a simple shift in parenting time, it is no longer 'appropriate' to require a showing of a substantial change in circumstances.").

Pursuant to Section 452.400.2, "to modify a previous order of visitation rights, a court must merely find that the modification would serve the best interests of the child." Russell, 210 S.W.3d at 196. Unlike Section 452.410, Section 452.400.2 does not require any showing of a change in circumstances.

Logically, based upon the holding in Russell, Section 452.400.2 is only relevant when the original custody decree awards one parent sole physical custody and upon a motion to modify, a parent merely seeks to only alter the parenting time of each parent—not the physical "custody" designation. Thus, if sole physical custody was awarded in the initial child custody decree, and the modification judgment does not alter that sole physical custody award (sole physical custody remains intact for the same parent originally so awarded), but merely adjusts the parenting time of each parent, said modification would fall under the governance of Section 452.400.2.

### 2. *Summary of Applicable Child Custody Modification Standards*

Accordingly, under current Missouri law, there exist three separate and distinct applicable standards when modifying a physical custody arrangement:

(1) "Section 452.410 Statutory Standard";

(2) "Section 452.410 Case Law Standard"; and

(3) "Section 452.400.2 Standard."

As is self-evident, the type of modification sought dictates the standard and burden. Accordingly, the proper designation of the prior and modified physical custodial arrangements as either "sole" or "joint" is crucial when determining the standard to apply when seeking a modification, as we discuss, infra.

9

**B. Determining the Physical "Custody" Designation**

For over ten years our appellate courts have, without exception, sternly admonished the use of "primary physical custody." [C]ustody,' as defined . . . does not include 'primary physical custody' as a statutorily permissible physical custodial arrangement, only joint or sole physical custody" is statutorily permissible. <u>Derks v. Surface</u>, 189 S.W.3d 692, 697 (Mo. App. W.D. 2006); <u>see</u> <u>also</u> <u>Loumiet v. Loumiet</u>, 103 S.W.3d 332, 338 (Mo. App. W.D. 2003) (courts and lawyers alike, formerly, had a tendency to utilize terms such as "primary physical custody," "primary physical custodian" and "custodial parent" when joint physical custody was actually awarded in order to differentiate between the parents and signify which parent had more physical custody, however such terminology must be abandoned). The conundrum the foregoing terminology causes both modification courts and appellate courts cannot be overstated.

In the instant matter, the initial child custody decree—the Dissolution Judgment—failed to classify the physical custody arrangement as either "joint" or "sole." Rather, the physical custody arrangement reads as follows:

> The parties hereto agree that legal custody of the minor children be granted to both parties and that the primary physical custody, care and control shall be with Petitioner [Mother] subject to Respondent's [Father] rights of temporary custody and visitation pursuant to the Parenting Plan . . . .

Moreover, the Modification Judgment did not explicitly denominate the physical custody arrangement awarded under the Dissolution Judgment.[2]

In Missouri, the designation of the prior physical custody arrangement and the modified physical custody arrangement has been problematic.

---

[2] Upon a motion to modify, the court reviews and modifies the most recent child custody decree, regardless of the number of previous child custody decrees ordered. For purposes of clarity, "prior child custody decree," when used herein, refers to the child custody decree last ordered.

10

First, in Baker v. Welborn, 77 S.W.3d 711, 716 (Mo. App. S.D. 2002) (abrogated on other grounds), the Missouri Court of Appeals, Southern District, set forth a paradigm to determine the applicable *classification* of the physical custody arrangement when a parent seeks a physical custody modification. Baker, 77 S.W.3d at 715-16. That court reviewed the "substance" of the modification and awarded parenting time, rather than the prior child custody decree's designation of the physical custody arrangement. Id. at 718. Pursuant to Baker, "the requirements for modifying rights of parents following a dissolution of marriage must be determined on a case-by-case basis regardless of the terminology used in the judgment that is sought to be modified." Id. Essentially, the court was not concerned with the terminology given to the physical custody arrangement used in the prior child custody decree. Rather, the court focused upon the actual allocation of parenting time awarded in the prior child custody decree in determining the appropriate designation of the physical custody arrangement.

Second, in Timmerman v. Timmerman, 139 S.W.3d 230 (Mo. App. W.D. 2004) (*en banc*), the Missouri Court of Appeals, Western District, explicitly rejected the Baker paradigm. Timmerman, 139 S.W.3d at 236. Timmerman simply set forth a bright line test to determine the designation of the physical custody arrangement set forth in the prior child custody decree. Id. That bright line test merely requires the modification court to review the designation given to the physical custody arrangement in the prior child custody decree. Id. Accordingly, the court does not review the allocation of parenting time, but, only the terminology specified. Thus, if the most recent child custody decree labeled the physical custodial arrangement as "joint," then the "joint" designation shall be used to determine the applicable modification standard, regardless of the actual allocation of parenting time. Under Timmerman, the terminology used in the prior child custody decree matters significantly as it dictates the applicable modification standard. Id.

11

("[A]lthough the designation of either joint or sole physical custody with liberal visitation has little or no practical effect in most situations, such designation is crucial for modification purposes.").

Third, in Russell v. Russell, 2006 WL 2251819 (Mo. App. E.D. Aug. 8, 2006) (hereinafter, "Russell, E.D."), prior to transfer to the Supreme Court, this court also examined this exact issue. In Russell, E.D., this court, like the Western District, rejected the paradigm prescribed by Baker, and instead elected to adopt the bright line test drawn in Timmerman. Russell, E.D., 2016 WL 2251819 at *5. In adopting Timmerman, and rejecting Baker, this court found that "the Southern District approach [in Baker] leaves the determination of whether to apply section 452.410.1 or section 452.400.2 until the end of the case[.]" Id. at *5. Although this court noted the flaws, inconsistencies, and illogical results of both Baker and Timmerman, we, nevertheless, concluded "the Southern District approach [was] less desirable than the Western District approach." Id at *4-*5.

Finally, upon accepting transfer of Russell, E.D., the Supreme Court effectively resolved the distinct appellate split. Russell, 210 S.W.3d at 196. Although Russell did not explicitly cite to, adopt, or distinguish Baker or Timmerman, the Supreme Court did provide guidance and a method for determining the modification standard to be applied. Id. Pursuant to Russell, as a "threshold matter" in determining which modification statute applies—Section 452.410.1 or 452.400.2—the Supreme Court noted that the modification court must review the most recent custody arrangement to determine if said terminology of the physical custody arrangement "is, *in fact*, joint physical custody, *as defined by statute*." Id. (emphasis added). However, Russell's analysis ceased there, "because [in that matter] the initial dissolution judgment *appropriately* denominate[d] the arrangement as joint physical custody[.]" Id. (emphasis added). Accordingly,

12

if "[t]he original judgment labeled the custody provisions as joint legal and physical custody, and *there is no doubt that the circuit court's description complies with the statutory definition*[,]" the modification court need not review the allocation of parenting time. Id. at 197 (emphasis added).

Essentially, although Russell relied upon the prior child custody decree's designation of the physical custody arrangement in determining the appropriate modification standard, the Supreme Court also implied that said designation must be "appropriately" denominated in compliance with the statutory definition of joint physical custody.[3] The Supreme Court merged the Baker paradigm and the Timmerman bright line test.

Therefore, pursuant to the direction and guidance of Russell, this court holds when a court confronts a modification of physical custody, that court must give weight to the prior child custody decree's designation of the physical custody arrangement so long as said designation complies with the statutory definition of joint physical custody. If the prior child custody decree's designation of the physical custody arrangement violates the statutory definition, the court shall "appropriately" designate or classify the physical custody arrangement. See also Wood v. Wood, 193 S.W.3d 307, 311 (Mo. App. E.D. 2006) ("When the court orders significant periods of time where the child is under the care and supervision of each parent, the award is one of joint physical custody, regardless of how the court characterizes it.").

**C. Application of Custody Designation to the Dissolution & Modification Judgments**

Turning, now, to the physical custody awarded in the Dissolution Judgment, we find the Dissolution Judgment awarded Father physical custody of Minor Children every other weekend, one weekly visitation, six weeks during summer break, and alternating holidays and birthdays;

---

[3] "**Joint physical custody'** means an order awarding each of the parents significant, but not necessarily equal, periods of time during which a child resides with or is under the care and supervision of each of the parents. Joint physical custody shall be shared by the parents in such a way as to assure the child of frequent, continuing and meaningful contact with both parents[.]" Section 452.375.1(3) (emphasis in original).

13

Mother was awarded physical custody at all other times therein. Ostensibly, Father was awarded what is commonly referred —at least in domestic attorney parlance—as a "Siegenthaler Schedule."[4] McElroy v. McElroy, 910 S.W.2d 798, 805 n.3 (Mo. App. E.D. 1995).

Insomuch as Father was awarded a "Siegenthaler Schedule" in the initial child custody decree, the modification court was confronted with the issue of classifying that physical custody arrangement as either joint or sole. As noted supra, pursuant to Section 452.375.1(3), "joint physical custody" is defined as an arrangement where each parent is awarded "significant, but not necessarily equal, periods of time during which a child resides with or is under the care and supervision of each of the parents." See also Clark ex rel. Clark v. Ingram, 380 S.W.3d 607, 608 (Mo. App. W.D. 2012). Conversely, "sole physical custody" is statutorily undefined. Id. "Given the definition of joint physical custody, however, sole physical custody would logically encompass custodial arrangements in which one of the parents is not awarded significant periods of custodial time." Alberswerth v. Alberswerth, 184 S.W.3d 81, 87 n.3 (Mo. App. W.D. 2006) (citations omitted). Hence, "[t]he determining factor in classifying physical custody arrangements as either joint or sole is whether the period of physical custodial time awarded to the parents is deemed 'significant.'" LaRocca v. LaRocca, 135 S.W.3d 522, 525 (Mo. App. E.D. 2006) (citations omitted).

Similar to "sole physical custody," the term "significant" is left undefined by statute. Generally, in such a scenario, this court reverts to the principles of statutory interpretation. Lutes

---

[4] As an aside, due to the frequency in which a "Siegenthaler Schedule" is either awarded or exploited as a foundation for settlement negotiations, we briefly reiterate that which has been repeatedly expounded upon by our courts. A "Siegenthaler Schedule is "not a determination of the 'minimally appropriate' visitation award." Peniston v. Peniston, 161 S.W.3d 428, 432 (Mo. App. W.D. 2005) (citing Rothfuss v. Whalen, 812 S.W.2d 232, 235 (Mo. App. E.D. 1991)). Rather, every custody dispute should be determined upon the particular facts and the welfare of the children. Peniston, 161 S.W.3d at 432; see also Kroeger-Eberhart v. Eberhart, 254 S.W.3d 38, 48 (Mo. App. E.D. 2007) ("Where child custody is at issue, the child's welfare is the primary consideration."). A "Siegenthaler Schedule" should not be a default standard.

14

v. Schaefer, 431 S.W.3d 550, 556 (Mo. App. E.D. 2014). In the absence of a statutory definition, "the words used in the statute are given their plain and ordinary meaning." Columbia Athletic Club v. Dir. of Revenue, 961 S.W.2d 806, 809 (Mo. banc 1998) (overruled on other grounds). "The dictionary is frequently used as a tool in determining the ordinary meaning of statutory language, yet, dictionary definitions are not the final source of guidance as the plain and ordinary meaning of a word does not necessarily equate to its dictionary definition." Lutes, 431 S.W.3d at 556. Here, meaningful insight and context is provided via a review of the Dictionary definition of "significant." Pertinently, "significant" is defined as "of a noticeably or measurably large amount[.]" MERRIAM–WEBSTER ONLINE DICTIONARY. 2016. http:// merriamwebster.com (2 Aug. 2016).

In accordance with Rule 73.01(c), we find the modification court determined Mother was awarded sole physical custody in the Dissolution Judgment. Rule 73.01(c) ("All fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached."); see, e.g., Fonner v. Lyman, 469 S.W.3d 3, 6 (Mo. App. S.D. 2015) (". . . Rule 73.01(c) mandates that we consider that the trial court implicitly made such findings of fact in accordance with its result in modifying the custody provisions of the dissolution judgment."). The modification court's implicit designation of the Dissolution Judgment's award of sole physical custody to Mother—wherein Father was awarded 2 overnight visitations every fourteen days—is not "significant" custodial time. Two overnight visitations does not equate to a "measurably large amount." Accordingly, the modification court correctly determined a "Siegenthaler Schedule," or a comparable variation thereof, amounts to "sole physical custody." We, herein, draw that bright line, and any other designation is erroneous.

15

As we discuss, <u>infra</u>, the Modification Judgment awarded Mother a very similar physical custody arrangement.  Certainly, Mother would never contend she has been awarded joint physical custody.  In fact, we don't believe **any reasonable parent** would argue 2 or 3 nights out of 14 nights constitutes "joint physical custody."  <u>Pennington v. Marcum</u>, 266 S.W.3d 759, 767 (Ky. 2008) ("This is perhaps too legalistic in a reality-based world.  To most people, having custody means having possession of the child.").

Moreover, this designation is in accord with our State's long declared public policy that children maintain "frequent, continuing and meaningful contact with *both* parents after the parents have separated . . . ."  Section 452.375.4 (emphasis added).  In fact, this State's public policy has been recently echoed and reaffirmed by our co-equal constitutional partners in the legislative and executive branches of government.  In its most recent session, our legislative partners passed House Bill 1550.  <u>See</u> H.B. 1550 (2016).  Our executive partner signed House Bill 1550 on July 1, 2016.[5]  House Bill 1550, amends, *inter alia*, Section 452.375 to prohibit a court from "presum[ing] that a parent, solely because of his or her sex, is more qualified than the other parent to act as a joint or sole legal or physical custodian for the child."  <u>Id</u>. at 13.  The legislative intent of House Bill 1550 seeks "to maximize to the highest degree the amount of time the child may spend with each parent."  <u>Id</u>. at 18.

The instant matter does not present this court with the opportunity to determine that which would actually constitute "joint physical custody."  As such, we decline to draw a bright line test, and reserve resolution of that issue until the facts of such a case so present themselves.

---

[5] House Bill 1550 (2016) becomes effective August 28, 2016.  We note that our holding, herein, would not have been altered had said bill not been passed, in that Section 452.375.4 would remain operative.  However, the passage and signing of House Bill 1550 (2016) lends credence to this court's understanding and interpretation of our Legislature's attempt to shift public policy in this specific arena.

Nevertheless, observing and effectuating this State's avowed public policy (Section 452.375.4), the explicit legislative intent of House Bill 1550 (2016), and ensuring continuity for all children requires our trial courts to enter a joint physical custody arrangement that is substantially equal.[6] An award of significantly unequal parenting time—such as a "Siegenthaler Schedule"—requires the trial court to overcome this State's preference for joint physical custody. Trial courts should heed this State's public policy by awarding "significant" periods of parenting time to each parent, unless the best interest of the child compels otherwise.

Therefore, we affirm the modification court's implicit finding that the Dissolution Judgment awarded Mother sole physical custody, with rights of visitation to Father.

**D. Application of the Appropriate Modification Standard**

Next, having denominated the physical "custody" ordered in the initial child custody decree as "sole physical custody," this court turns to the modification sought and subsequently ordered by the trial court.

Father's Motion to Modify prayed that the trial court award him sole physical custody. The Modification Judgment, awarded Mother physical custody of Minor Children every other weekend, one weekly dinner visitation, every other week during summer break, and alternating holidays and birthdays; Father was awarded physical custody at all other times therein. The Modification Judgment denominated the physical custody arrangement as "sole physical custody" to Father.

---

[6] A parenting schedule wherein one parent has custody every Monday and Tuesday, and the other parent has custody every Wednesday and Thursday, with alternating weekend blocks of Friday, Saturday and Sunday, would achieve both our State's declared public policy and continuity for children. While each parent's time is equal in this example, we decline to draw it as the bright line for joint physical custody as we note each family is unique and the facts of each case will dictate the parenting plan in the best interest of the children.

17

Manifestly, the Modification Judgment's physical custody arrangement was merely a comparable variation of a "Siegenthaler Schedule." Accordingly, pursuant to our analysis supra, the trial court appropriately denominated this physical custody arrangement as "sole."

In finding that the trial court modified sole physical custody from Mother to Father, the applicable standard governing the trial court's Modification Judgment is set forth in the "Section 452.410 Case Law Standard," supra. As such, Father carried the burden of evidencing, (a) a *substantial* change in circumstances of the *child* or his *custodian* and (b) said modification was necessary to serve the best interests of Minor Children.

Here, the Modification Judgment reveals the trial court found Father met the issue of substantial change of circumstances as to Minor Children and their custodian.[7] Upon said finding, the court then determined the physical custody arrangement upon consideration of the Minor Children's best interests by analyzing all relevant factors, including those set forth in Section 452.375.2. In fact, the trial court extensively addressed each of those eight factors and provided numerous reasons for the ordered physical custody arrangement in its Modification Judgment. These reasons include, but are not limited to: no allegations of abuse or neglect; Minor Children would benefit from frequent, continuing, and meaningful relationships with both parents, especially now that Minor Children are older; Mother demonstrated an unwillingness and inability to actively perform her functions as Mother, especially in the area of education; Mother had relocated several times since the entry of the Dissolution Judgment; Mother permitted Minor Children to have excessive absences and tardies from school (albeit, with improvements); Mother withheld information from Father regarding Minor Children's

---

[7] On appeal, Mother argues the substantial change in circumstances related to only Father, the non-custodial parent. However, Mother's contention is without merit. The substantial change in circumstances related to both Mother and Minor Children as documented herein.

18

educational needs; Mother failed to provide Father's contact information to Minor Children's school; and Mother objected to vaccinating Minor Children, based upon religious beliefs.

Now, on appeal, Mother requests this court to reweigh certain evidence, or give no weight thereto, and determine physical custody in manner differently than the trial court. However, "[a] trial court's custody determination is afforded greater deference than other decisions." McGahan v. McGahan, 237 S.W.3d 265, 269 (Mo. App. E.D. 2007). We grant the trial court broad discretion and do not reweigh the evidence, even if the evidence may have supported another conclusion. Dunkle v. Dunkle, 158 S.W.3d 823, 832-33 (Mo. App. E.D. 2005). This court will not reverse a trial court's child custody determination unless we are "firmly convinced" that the welfare of the child requires an alternative arrangement. Siegfried v. Remaklus, 95 S.W.3d 107, 111 (Mo. App. E.D.2001); see also Mahoney v. Mahoney, 162 S.W.3d 512, 517 (Mo. App. W.D.2005) ("we proceed under the presumption that the trial court reviewed all evidence and based its decision on the child's best interests") (citations omitted). If evidence does not "clearly preponderate in favor of either parent, *we will reverse the trial court's award only when there has been an abuse of discretion*." Gulley v. Gulley, 852 S.W.2d 874, 876 (Mo. App. E.D. 1993) (emphasis added).

Not only do we fail to harbor any belief that "firmly convinces" us that a different physical custody arrangement serves the best interests of the Minor Children, but we are firmly unconvinced a different physical custody arrangement would be appropriate under these given facts. Even if we were to exclude the trial court's reliance upon Mother's unanswered Requests for Admissions and the GAL's school district recommendation, we do not find the trial court abused its discretion as there is other competent and substantial evidence for the Modification

19

Judgment. The trial court determined, after the presentation of an abundance of evidence, an award of sole physical custody to Father was in the best interest of Minor Children.

Mother's Point I is denied.

**Point II: Modification of Legal Custody**

In her second point on appeal, Mother avers that the trial court erred in entering the Modification Judgment by awarding Father sole legal custody of the Minor Children. Specifically, Mother contends the trial court's determination erroneously declared or applied the law in finding a change in circumstances as to award Father sole legal custody. Moreover, Mother contends that awarding Father sole legal custody was against the weight of the evidence, in that the trial court: (1) erroneously overcame the presumption of joint legal custody by unjustified reliance upon the litigants' inability to share parental decisions; (2) failed to account for or give proper weight to the GAL's joint legal custody recommendation;[8] and (3) conferred undue weight upon the "minor" conflicts between Mother and Father.

Identical to the Section 452.410 Case Law Standard for modifying physical custody, when seeking a modification of legal custody, the parent seeking the modification must demonstrate (a) a *substantial* change in circumstances of the *child* or his *custodian* and (b) if the trial court finds a *substantial* change of circumstances as to the child or his custodian, then the trial court must determine whether a modification is necessary to serve the best interests of the child. S.I.E. v. J.M., 199 S.W.3d 808, 816 (Mo. App. S.D. 2006).

The "breakdown in communication and cooperation alone is sufficient to constitute a change of circumstances warranting the modification of legal custody." Mehler v. Martin, 440

---

[8] Mother's argument in this regard lacks merit. "Where the GAL does make a recommendation, the trial court is not bound by that opinion. The trial court has *sole* responsibility for determining custody." In re Marriage of Harris, 446 S.W.3d 320, 330 (Mo. App. S.D. 2014) (internal citations omitted).

20

S.W.3d 529, 536 (Mo. App. E.D. 2014). The parents' ability and willingness to communicate and cooperate is "crucial in considering whether joint legal custody is proper[,]" and if the parents are unable to make shared decisions concerning the welfare of their children, joint custody is inappropriate and not in the children's best interests. Id.; see also In re Marriage of Sutton, 233 S.W.3d 786, 790 (Mo. App. E.D. 2007) ("In determining whether joint legal custody is in the child's best interests, we consider the parties' commonality of beliefs concerning parental decisions, the parties' inability to function as a parental unit in making those decisions, and the parties' demonstrated willingness and ability to share the rights and responsibilities of raising their children.") (internal citations and quotation marks omitted).

However, joint legal custody is not always or necessarily inappropriate "merely because there is some level of personal tension and hostility" between the parents "*provided that* there is substantial evidence that despite this acrimony the parties nonetheless have the ability and willingness to fundamentally cooperate in making decisions concerning the child's upbringing." McCauley v. Schenkel, 977 S.W.2d 45, 50-51 (Mo. App. W.D. 1998) (emphasis in original).

First, Mother claims that the award of sole legal custody to Father was erroneous because there existed no substantial change in circumstances, in that the dispute over vaccinating Minor Children arose prior to or at the time of the Dissolution Judgment. However, Mother fails to account for the incessant breakdown in communication that has arisen *since* the entry of the Dissolution Judgment. Since the entry of the Dissolution Judgment Mother has failed to provide Father with statutorily mandated notices regarding several of her multiple relocations, Mother has caused Minor Children to sustain unwarranted absences and tardies from school without notifications or justifications to Father,[9] Mother has failed to provide Father with any

---

[9] Although Minor Children's school attendance ratio increased dramatically over the past year, it is telling that said increase occurred only after Father filed his Motion to Modify. A parent should not be able to evade the

information regarding the medical providers treating Minor Children (if any), Mother often neglects to inform Father of extracurricular activities for Minor Children, and Mother's correspondence with Father is unfitting of a cohesive parental relationship, in that Mother frequently disregards Father's phone calls and texts. Thus, even if this court were to discount the vaccination dispute, the evidence at trial exposes a serious breakdown in communication and cooperation—*since* the Dissolution Judgment—such that the trial court's finding that Mother and Father cannot make consistent, meaningful, and judicious shared decisions for the benefit of Minor Children was appropriate. Certainly, this court, like the trial court, notes that Father is not faultless, but the Modification Judgment is based upon substantial evidence in the record demonstrating the parties' inability to function as a parental unit. Shockley v. Shockley, 882 S.W.2d 775, 776 (Mo. App. E.D. 1994).

Second, Mother contends the trial court upended this State's public policy preferring joint legal custody by lending inappropriate weight to Mother's culpabilities versus that of Father's flaws.

Pursuant to Section 452.375.4 "it is the public policy of this state to encourage parents to participate in decisions affecting the health, education and welfare of their children, and to resolve disputes involving their children amicably through alternative dispute resolution." However, "[t]he preference for joint custody stated in section 452.375 does not mandate a joint custody award designed to induce parents to find common ground; rather it expresses a preference in favor of parents who show the willingness and ability to share child-rearing rights and responsibilities." Eberhart, 254 S.W.3d at 48. The "dominant consideration" for awarding joint legal custody begins and ends with a custodial arrangement that "best serves the interests of

---

ramifications of their actions while not under the watchful eye of the court. In fact, a parent's actions while outside the purview of a court are very probative and revealing, if not more so than while the parent is haled into court.

22

the child." Id. (citations omitted); see, e.g., In re Marriage of Sutton, 233 S.W.3d at 791-93. Nevertheless, "custody should not be used to reward or punish either party." Eberhart, 254 S.W.3d at 48.

Mother is accurate in her assertion that there exists evidence that both parties demonstrated a future objective to work together to raise their children. If the trial court had awarded joint legal custody, said award could or may have been supported by substantial and competent evidence as well. See, e.g., Frantz, 488 S.W.3d at 177. However, due to the considerable discretion afforded to the trial court, there also exists substantial and competent evidence for the trial court's award of sole legal custody to Father. Moreover, there is no evidence said award was intended to punish Mother; rather the substantial and competent evidence reveals the trial court found sole legal custody to Father was in the best interest of Minor Children. "We will not set aside a trial court's judgment of child custody unless we firmly believe that the decree is wrong and that the child's welfare requires another disposition." In re Marriage of Sutton, 233 S.W.3d at 789.

Point II is denied.

## Point III:  Child Support

In her third point relied on, Mother argues the trial court erred in awarding Father a retroactive credit for Father's child support arrears. Specifically Mother contends the trial court's award of a retroactive child support credit to Father was either a misapplication of the law or against the weight of the evidence, in that that trial court:  (1) bestowed undue weight upon Mother's answers to interrogatories propounded by Father regarding daycare expenses; (2) failed to account for or give proper weight to Father's testimony; and (3) incorrectly determined sufficient evidence existed so as to provide Father with said credit.

23

For comprehension of Mother's third point on appeal, this court begins by providing a recap of the applicable portions of the trial court's Modification Judgment. Upon acceptance of Mother's child support payment history (with statutory interest calculations), the trial court found Father in arrears of $10,153.72. Furthermore, based upon testimony at trial and Mother's answers to Father's interrogatories and request for admissions, the trial court determined Mother did not have day care expenses while this matter was pending.

Accordingly, the trial court concluded Father was entitled to a "retroactive child support calculation without child care" in the following manner:

> 13. The Court therefore computes Father's retroactive credit as follows. The Judgment of April 11, 2011 included child support of $935.00 per month which included $625.00 per month in day care [expenses]. The Consent Order on October 30, 2014 (Ex. P) computed child support of $386.00 per month with no day care [expenses]. Therefore, Father over paid child support of $549.00 per month ($935.00 per month – $386.00 per month). [Father] filed his action on April 12, 2013. As a result, April 12, 2013 until October 30, 2014 is approximately 18.67 months. The total overpayment of child support during these months is $10,249.83 ($549 per month x 18.67 months). The arrears with the Family Support Division as of June 3, 2015 are $9,747.92. To this the Court adds interest of $1,194.95, for a total child support arrears of $10,942.87. The Court then credits Father with overpayment of child support of $10,249.83, for a total arrearage of $693.04. Therefore, Father owes total arrears to Mother of $693.04 ($10,942.87 – $10,249.83) after adding interest and account for all credits. The Family Support Division shall update their records accordingly to reflect same.

Pursuant to Section 452.340.1, the trial court is permitted to order retroactive child support at the trial court's discretion. Smetana v. Smetana, 963 S.W.2d 1, 2 (Mo. App. W.D. 1998); Lokeman v. Flattery, 146 S.W.3d 422, 430 (Mo. App. W.D. 2004) ("The trial court had the authority to make a post-dissolution award of child support retroactive to the filing of the motion to modify."). We reiterate that a trial court's decision to award retroactive child support is within the trial court's "sound discretion" and will not be disturbed absent an abuse of

24

discretion.  Laubinger v. Laubinger, 5 S.W.3d 166, 180 (Mo. App. W.D. 1999); see also Franklin v. Franklin, 213 S.W.3d 218, 227 (Mo. App. E.D. 2007).

We note both the trial court and Mother denominated or described this child support award as a "credit" in favor of Father.  However, the trial court's child support award was merely a retroactive application of child support.  Although the vast majority of appellate cases applying the retroactive child support statute commences or increases a paying-parent's financial liabilities, the plain language of the Section 452.340.1, does not prohibit the retroactive award of child support which decreases a paying-parent's financial liabilities.

On October 30, 2014, Mother consented (via an Interim Order Regarding Custody and Support) to a reduction of Father's monthly child support.  Specifically, therein, Father's child support liabilities decreased from $935.00 per month to $386.00 per month.  This significant decrease was occasioned, in part, by Mother's lack of childcare expenses.  Thus, Mother voluntarily conceded her lack of childcare expenses as of October 30, 2014.

At trial, Father argued Mother lacked childcare expenses since, at least, the filing of his Motion to Modify.  Accordingly, the trial court was posed the question—which the trial court could determine at its discretion in adjudicating retroactive child support—as to *when* Mother ceased incurring child care expenses.  Based upon the evidence proffered during the course of trial, the trial court determined Mother did not incur childcare expenses during the pendency of this matter.  As such, the trial court retroactively, as permitted by Section 452.340.1, decreased Father's monthly child support liabilities backdated to the commencement of Father's Motion to Modify, filed April 12, 2013.

Now, on appeal, Mother invites this court to reweigh the evidence and supplant our judgment for that of the trial court's judgment in regards to *when* Mother ceased incurring child

care expenses. Such an entreaty will not be entertained lest there arises an abuse of discretion. Smetana, 963 S.W.2d at 2 ("Without a clear showing of abuse of discretion, the circuit court's determination as to the effective date of a child support will not be reversed.").

"Form 14 expressly provides for allocation of the custodial parent's reasonable work-related child care costs." M.L.R. v. Jones, 437 S.W.3d 404, 407 (Mo. App. S.D. 2014) (citations omitted); see also McCormick v. McCormick, 934 S.W.2d 32, 34 (Mo. App. E.D. 1996) ("In making its Form 14 calculations, the trial court is to determine the custodial parent's reasonable work-related child care costs, less any federal income tax credit."). Accordingly, "[w]here a custodial parent establishes *actual and necessary* child care expenses incurred as a result of working or attending school, the expenses can be considered in calculating child support." Stufflebean v. Stufflebean, 941 S.W.2d 844, 847 (Mo. App. W.D. 1997) (emphasis added). However, the inclusion of an item, such as childcare expenses, on the Form 14 "must be supported by substantial evidence." McCandless-Glimcher v. Glimcher, 73 S.W.3d 68, 80 (Mo. App. W.D. 2002). The trial court is granted broad discretion in awarding child support; this broad discretion includes latitude in determining the need and the appropriate dollar amount regarding work-related child care expenses. Stufflebean, 941 S.W.2d at 846; see also Glimcher, 73 S.W.3d at 80.

Generally, the parent obligated to pay child support ("paying-parent") "must strictly comply" with the child support order or seek court-ordered modification thereof if circumstances have changed. Ballard v. Hendricks, 877 S.W.2d 232, 235 (Mo. App. W.D. 1994). Nevertheless, it is fundamental that "[t]he purpose of child support is to provide for the *specific needs* of the children." In re Marriage of Gerhard, 985 S.W.2d 927, 935 (Mo. App. S.D. 1999) (emphasis added). To accomplish this purpose, the trial court is vested with the "equitable

doctrine allowing the obligated parent [paying-parent] credit against arrearages in child support collection proceedings[.]" Hendricks, 877 S.W.2d at 236. This equitable power is germane and applicable based on the facts of each case. Id.

Without dispute, both Mother and Father acknowledged Mother incurred some childcare expenses since the entry of the Dissolution Judgment—the exact amount of those childcare expenses is left unresolved. However, during trial, Mother failed to proffer credible evidence that she incurred childcare expenses since Father's filing of his Motion to Modify on April 12, 2013. First, Mother freely admitted, both in her answers to Father's interrogatories and during trial, that she was not presently incurring childcare expenses. Second, Mother failed to adduce *any* evidence or testimony as to the childcare expenses she had incurred during the pendency of the underlying matter. Third, besides Duchesne Elementary, Mother tendered no other childcare providers or the exact amounts paid.

Having failed in proffering evidence of childcare expenses at trial, Mother now endeavors to bootstrap her *past* childcare expenses in order to meet her evidentiary burden. Evidence of Mother's childcare expenses *in the past* do not equate to evidence of childcare expenses incurred by Mother since Father's filing of his Motion to Modify. Accordingly, the trial court's retroactive child support award is supported by substantial evidence. Davies v. Davies, 887 S.W.2d 800, 804 (Mo. App. E.D. 1994) ("When determining the sufficiency of the evidence, the reviewing court accepts as true the evidence and inferences therefrom that are favorable to the trial court's decree, and disregards all contrary evidence."). To find in favor of Mother, this court would be required to reweigh the evidence and supersede the trial court's witness credibility determinations. That, this court will not do. Shelton v. Shelton, 29 S.W.3d 400, 405 (Mo. App. E.D. 2000) ("Where conflicting evidence exists, deference is given to the

27

trial court which can assess the credibility of the witnesses."); <u>Wennihan v. Wennihan</u>, 452 S.W.3d 723, 730 (Mo. App. W.D. 2015) ("It is not for this Court to reweigh the evidence.").

Furthermore, we find the trial court appropriately employed its equitable powers as to provide Father with a "credit" for past due child support. The evidence reveals Mother was not incurring childcare expenses since, at least, the filing of Father's Motion to Modify. For the trial court to award Mother childcare expenses she did not incur would run afoul of the rationale of child support.

Therefore, we hold the trial court did not abuse its discretion or misapply the law in awarding Father a retroactive child support decrease so as to account for Mother's lack of childcare expenses. <u>See</u>, <u>e.g.</u>, <u>Finch v. Finch</u>, 442 S.W.3d 209, 221-222 (Mo. App. W.D. 2014) (trial court did not abuse its discretion in ordering retroactive child support); <u>Shelton</u>, 29 S.W.3d at 405.

Point III is denied.

**Point IV:  Attorney's Fees**

In her fourth and final point, Mother alleges that the trial court erred in awarding Father attorney's fees. Mother first argues the award of attorney's fees was a misapplication of the law or contrary to the law, in that the trial court's Modification Judgment equivocated as to the legal authority for the award; specifically, Mother contends it is unclear whether the award of attorney's fees was pursuant to Section 452.355 or in the nature of sanctions. Next, regardless of the legal authority utilized by the trial court in awarding attorney's fees, Mother claims the trial court abused its discretion, in that Mother's income was half of Father's, Mother's conduct during the pendency of the matter was not inappropriate, and the amount of the award was "overly punitive."

28

Again, we begin with a summary of the operable parts of the Modification Judgment. The trial court determined Father's and Mother's attorney's fees were $9,131.13 and $7,650, respectively. In ordering Mother to pay $4,566 of Father's attorney's fees, the trial court stated that it was "guided by RSMo. Section 452.355." The trial court considered the parties' financial resources, the merits of each litigant's case, the conduct of the parties:

> The Court does not find that Father failed without good cause to comply with the Order. Father testified that he fell behind because he had lost his job. Mother presented no evidence to the contrary that Father had the ability to comply with the child support order but failed to do so without good cause. The Child Support Payment History shows that Father made payments toward child support every month this case was pending. Further, the longest period Father went without paying child support was two (2) months. The Court takes note of Mother's conduct during the case, which included Mother's failure to timely file pleadings, comply with discovery, and continuation of the case on more than one (1) occasion when the case was set for trial and Father was prepared and ready to try the case.

"Generally speaking, parties to a domestic relations case are responsible for paying their own attorney's fees." Ethridge v. Ethridge, 239 S.W.3d 676, 684 (Mo. App. E.D. 2007). However, pursuant to Section 452.355.1, the trial court is authorized to award attorney fees arising out of a dissolution proceeding, including modifications thereof. Meierer v. Meierer, 876 S.W.2d 36, 37 (Mo. App. W.D. 1994); see, e.g., Lokeman, 146 S.W.3d at 432 (awarding attorney's fees in a modification proceeding). The trial court is vested with broad discretion in awarding attorney's fees under Section 452.355 and that award of attorney's fees will be reversed only upon a finding of an abuse of discretion. Thorp v. Thorp, 390 S.W.3d 871, 881 (Mo. App. E.D. 2013); see also Potts, 303 S.W.3d at 196 (we presume the trial court's award is correct); but see Davis v. Schmidt, 210 S.W.3d 494, 512 (Mo. App. W.D. 2007) ("[A]n award of attorney fees under section 452.355.1 represents the exception, rather than the rule.").

In determining a party's request for attorney's fees under the authority of Section 452.355.1, the trial court must consider "all relevant factors, including [1] the financial resources of the parties, [2] the merits of the case, and [3] the actions of the parties during the pendency of the action." Miller v. Miller, 184 S.W.3d 174, 186 (Mo. App. S.D. 2006). The requesting-party bears the burden of proving his or her entitlement to such an award. Schmidt, 210 S.W.3d at 512.

Here, in awarding Father attorney's fees, the trial court's Modification Judgment explicitly cites to Section 452.355. The trial court then proceeds to unequivocally discuss the relevant factors, as prescribed by Section 452.355. See Section 452.355.1 (". . . after considering all relevant factors including the financial resources of both parties, the merits of the case and the actions of the parties during the pendency of the action . . . ."). Although the trial court references Father's request for sanctions, said reference does not spontaneously trigger the award of attorney's fees to be deemed as adjudged under the auspices of the trial court's inherent power to impose sanctions. McLean v. First Horizon Home Loan, Corp., 369 S.W.3d 794, 801 (Mo. App. W.D. 2012) ("A trial court has the inherent power to enforce compliance with its reasonable order and may, at its discretion, impose sanctions when they are justified, considering the conduct of the parties and counsel."). Furthermore, the trial court's mere mention of Father's request for sanctions does not generate confusion or uncertainty as to the authority exercised by the trial court in awarding attorney's fees. Rather, the trial court's discussion of Father's request for sanctions distinctly relates to the third factor of Section 452.355.1—the conduct of the parties during the pendency of the action. The trial court adjudicated its award of attorney's fees pursuant to Section 452.355.1. There exists no lack of clarity in this regard.[10]

---

[10] Even if this court were to find merit with Mother's argument, this court would, nevertheless, review the propriety of the attorney's fees award under both Section 452.355 and as a sanction because this court is afforded the authority

30

Insomuch as we find the trial court ordered Mother to pay a portion of Father's attorney's fees under Section 452.355.1, we proceed to determine the propriety of the trial court's award upon a review of "all relevant factors" including those three factors unambiguously specified by Section 452.355.1. See Section 452.355, supra.

The cynosure of Mother's argument is occupied upon the alleged financial disparity as between Mother and Father. Although the Modification Judgment found "the parties' financial resources [to be] relatively similar[,]" the evidence presented at trial reveals disparate financial circumstances. According to the trial court's own Form 14, Line 3 indicated Father's proportionate share of the Gross Income was 69% compared to Mother's 31% share. Bothe v. Bothe, 266 S.W.3d 321, 326 (Mo. App. E.D. 2008) ("The Form 14 is the most comprehensive assessment of the parties' respective financial standings[.]"). Similarly, Line 1 of the trial court's Form 14 intimates Father's gross monthly income to stand at $3,533.00, whereas Mother's gross monthly income rests at $1,590.00. Cf. Thorp, 390 S.W.3d at 881-82 (affirming the trial court's award of attorney's fees to Mother occasioned by Father's 78.2% proportionate share of the Gross Income as indicated on the Form 14). Indisputably, Father has a greater ability to pay when contrasted with Mother; moreover, there was scant evidence regarding Father's inability to pay his own attorney's fees. McNair v. McNair, 987 S.W.2d 4, 8 (Mo. App. W.D. 1998) (although, one party's inability to pay his or her attorney's fees is not a requirement for awarding attorney's fees, one party's greater ability to pay is sufficient to support an award of attorney's fees to the other party); Crews v. Crews, 949 S.W.2d 659, 672 (Mo. App. W.D. 1997) ("[A] mere showing of financial inability to pay is not sufficient, in and of itself, to reverse the trial court's award of

to "affirm under any reasonable theory supported by the evidence." Searcy v. Searcy, 85 S.W.3d 95, 99 (Mo. App. W.D. 2002); see, e.g., Mitalovich v. Toomey, 217 S.W.3d 338, 340 (Mo. App. E.D. 2007) ("We conclude the award of attorneys' fees was imposed as a sanction for two compelling reasons . . . .").

31

attorney's fees."). Given only these facts, had the trial court exclusively premised its award of attorney's fees upon the first factor—the financial resources of the parties—said award of attorney's fees would not have been supported by competent and substantial evidence. Bothe, 266 S.W.3d at 327.

In the instant matter, however, the trial court did not ground its award of attorney fees upon the financial resources of the parties. In re Marriage of Baker, 986 S.W.2d 950, 958 (Mo. App. S.D. 1999) ("[T]he financial state of a party seeking an attorney fee award is only one factor to consider[,]" and the ability or inability of the party seeking attorney's fees to pay "is not determinative."); see also Runyan v. Runyan, 907 S.W.2d 267, 273 (Mo. App. W.D. 1995) ("The parties financial condition is not a controlling factor, but is only one of the relevant factors for the trial court to consider in determining whether to award [attorney] fees.") (internal citations and quotation marks omitted). To the contrary, the trial court's award of attorney's fees was based almost entirely upon the second and third factors: the merits of the case and the actions of the parties during the pendency of the action.

In evaluating these two factors, first, the trial court found Father "presented a meritorious case[.]" Conversely, the trial court determined Mother's counter motion to modify and contempt proceedings to be unmeritorious. See, e.g., Pasternak v. Pasternak, 481 S.W.3d 873, 878 (Mo. App. E.D. 2015) (discussing an award of attorney fees premised upon, *inter alia*, the merits of the case.). This court subscribes to the trial court's fitting characterizations of the litigants' respective positions. After all, the trial court ordered, and we affirm, the modification of sole legal custody from Mother to Father, occasioned, in part, by Mother's ornery communication practices, Mother's multiple relocations, and Mother's laxity regarding Minor Children's attendance and timely arrival at school.

32

Mother, nevertheless, claims the trial court was "overly critical" of her motion for contempt, occasioned by Father's past due child support. However, this court need not expound further upon the non-meritorious nature of Mother's motion for contempt than that which was discussed under Point III, supra. Mother sought contempt against Father even though Father's child support arrears were set in motion by Mother's non-existent childcare expenses.

Second, the trial court, ostensibly, found Mother's conduct during the pendency of the underlying action to be debasing. Specifically, the trial court noted "Mother's failure to timely file pleadings, comply with discovery, and continuation of the case on more than one (1) occasion when the case was set for trial and Father was prepared and ready to try the case." Such conduct is troublesome and indicative of uncooperative propensities, especially in the context of litigation concerning the custody and best interests of her children. During the pendency of a domestic relations cause of action wherein minor children are at issue, litigants and attorneys alike should be scrupulously cognizant of the ramifications and consequences of their conduct and actions. Conduct like that demonstrated by Mother should not be tolerated and shall be admonished.

Moreover, conduct by a domestic relations litigant that unnecessarily increases the fees of the opposing party shall never be condoned. Long v. Long, 135 S.W.3d 538, 545 (Mo. App. S.D. 2004) ("A party's actions during the pendency of litigation may be considered in determining whether to make an award of attorney fees, especially when those fees were the result of the other party's improper conduct."); Bryant v. Bryant, 351 S.W.3d 681, 692 (Mo. App. E.D. 2011). Mother's multiple, unjustified continuances—which Mother does not dispute—is a flagrant illustration of unsuitable conduct of a domestic relations litigant. See, e.g., T.B.G. v. C.A.G., 772 S.W.2d 653, 655 (Mo. banc 1989).

Therefore, although the first factor (the financial resources of the parties) under Section 452.355.1 may not support the trial court's award of attorney's fees, the second and third factors (the merits of the case and the actions of the parties during the pendency of the action), thereunder, substantially and credibly validate the trial court's award. The award of attorney's fees was within the trial court's discretion and was supported by competent and substantial evidence, especially in light of the fact only a portion of Father's attorney's fees were awarded.

Mother's Point IV is denied.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
Lisa P. Page, Judge

Sherri B. Sullivan, P.J. and
Kurt S. Odenwald, J., concur.

34